# THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY ET AL. *v.* JOYCE.

### [No. 8,073. Filed November 21, 1913.]

1. LANDLORD AND TENANT.—*Possession.—Failure to Deliver.—
Breach of Lease.—Waiver.—Estoppel.—*Where plaintiff's lease
provided for a term beginning March 1st, but the lessor was
unable to give possession until March 23rd, the fact that plaintiff
then entered into possession, occupied during the remainder of
the term, paid the rent, and did not sue for damages until long
after the lease had expired, neither operated as a waiver of the
breach of the lessor's implied covenant for posssssion nor to estop
plaintiff to recover the damages occasioned thereby.   p. 662.

2. LANDLORD AND TENANT.—*Duty of Landlord.—Delivery of Pos-
session.—*A lessor impliedly covenants with the lessee that the
premises demised shall be open to entry by the lessee at the be-
ginning of the term, and it is the lessor's duty to oust any one who
at that time may be in possession.   p. 664.

3. LANDLORD AND TENANT.—*Breach of Covenant for Possession.—
Measure of Damages.—*In an action by a lessee to recover for the
landlord's failure to give possession, the lessee may recover the
difference between the agreed rent and the actual market rental
value of the premises for the term, plus such special damages as
have been directly and necessarily occasioned by the defendant's
wrongful act or default, but not what he might have made on
the premises during the lease, or probable profits, except where
the contract is such that the rent is to be paid by a share of
the crops raised, so that profits may be said to have been an
element contemplated by the contract.   p. 666.

4. LANDLORD AND TENANT.—*Breach of Covenant for Possession.—
Damages.—*In a lessee's action against the landlord for failure
to give possession at the commencement of the term, where the
lessee subsequently entered into possession and paid the cash

rent for the entire term, the proper measure of damages was the difference between the actual rental value for the entire term and the actual rental value for the remainder of the term, of the land in the condition in which the tenant holding over had left it, and at the time when plaintiff took possession, plus any special damages allowable under the general rule by reason of the landlord's wrongful act or default. p. 666.

5. LANDLORD AND TENANT.—*Breach of Covenant for Possession.— Damages.—Evidence.*—In a lessee's action against the landlord for failure to give possession at the beginning of the term, where the lessee subsequently entered into possession and paid the rent for the entire term, evidence was proper as to the condition of the land at the time plaintiff actually obtained possession; the effect, if any, upon the value of the lease by delay in giving possession; any depreciation of the value of the crops raised during the term, resulting from a yield below the normal in quantity and quality, and occasioned by the unfavorable condition of the soil and lateness of planting directly caused by the landlord's failure to give possession at the beginning of the term, or by the acts of the former tenant during the time of holding over; and as to all similar matters tending to show any depreciation in the rental value of the lease occasioned by the lessor's wrongful act or default; but such matters could be considered only as tending to show diminution in the rental value of the land and not as in themselves being elements of damages. p. 667.

6. LANDLORD AND TENANT.—*Breach of Covenant for Possession.— Damages.—Instructions.*—In an action against a lessor for failure to place lessee in possession at the beginning of the term, where the lessee paid the rent in cash for the entire term and later entered into possession and occupied for the remainder of the term, an instruction that the lessee could recover for any loss of crops that he may have sustained by reason of the delay in receiving possession, was erroneous. p. 668.

7. LANDLORD AND TENANT.—*Breach of Covenant for Possession.— Damages.—Occupancy of Other Premises.*—In a lessee's action for the landlord's failure to place him in possession at the commencement of the term, where the lessee had paid the rent for the entire term, he was entitled to recover the reasonable rental value of the premises occupied by him during the time he was deprived of possession under the lease, and not any amount that he may have voluntarily paid. p. 668.

From Superior Court of Marion County (79,953) ; *Pliny W. Bartholomew,* Judge.

Action by John Joyce against The Cleveland, Cincinnati,

Chicago and St. Louis Railway Company and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Leonard J. Hackney* and *Frank L. Littleton,* for appellants.

*Ernest T. Brown, Frank T. Brown* and *Brown & Brown,* for appellee.

IBACH, J.—Appellants being the owners of certain farm lands in Marion County, Indiana, leased the same to appellee on February 13, 1908, for the term of one year from March 1, 1908. The lease contained among other provisions the following: "Said lessee agrees to pay as rent for said premises the sum of one thousand dollars per annum, payable in equal quarterly installments in advance. It is also agreed that said lessors reserve the right and privilege to conduct, maintain and operate tracks across the above described property or any part thereof at any time during the term hereof upon thirty days written notice to said lessee. It is further agreed that in event said lessors find it necessary, expedient or desirable to conduct, maintain and operate track or tracks upon and across the premises above described or any part thereof said lessee shall have no recourse against said lessors for damages or losses by reason thereof, but said lessors shall and do hereby agree to refund to said lessee in full compensation and satisfaction of all claims for such damages or injury if any to said crops, if any such value exists, and if not the actual value of the labor and seed necessary to have prepared the ground, done the sowing or planting, and the cultivation which may have been done. It is further agreed that if said lessee shall perform his obligations under this lease he shall quietly have and enjoy said premises during said term free from molestation by said lessors", etc. When the lease was executed, another tenant was in possession, whose tenancy terminated on the same day appellee's lease com-

menced. The tenant in possession failed to surrender the premises until March 23, 1908, and appellee was thereby kept out of possession of the lands until that date, when appellee moved on the farm and held possession thereof for the balance of the rental period. Some time after the lease expired, he brought this action for damages.

The complaint is in three paragraphs. The first, after averring the execution of the lease, contains allegations showing that plaintiff had performed all the acts required of him by the terms of his lease, but that defendants had failed to give possession of the premises until March 23, twenty-three days after the date when he was entitled to the full possession of the farm and that he was damaged thereby in the sum of $2,000. The second paragraph is in all essential respects similar to the first, except that this paragraph contains a detailed statement of the particular damages sustained by the plaintiff on account of the delay in obtaining possession of the land, and the third, in addition to the necessary averments found in the first paragraph, charges that while plaintiff was in possession of the lands under his lease, the defendants committed certain acts of trespass on the land to his damage.

The first paragraph of answer was a general denial, the second an affirmative answer, which, omitting the formal parts, is as follows: "The defendants for a second paragraph of answer to the first and second paragraphs of complaint say that the plaintiff had full knowledge of all the wrongs and acts alleged in said paragraphs of complaint to have been done by the defendants and after he had, as he alleges, been kept out of the possession of the same from March 1, 1908, to March 23, 1908, inclusive, he then decided to take possession of said real estate under and by virtue of the terms of the lease set up in his complaint and did so take possession of it and did occupy, use and enjoy his rights in and to said real estate and did all this under and by virtue of his rights under said lease and did so use and occupy said

real estate until the expiration of said lease, to wit, March 1, 1909, and paid the rent for the same as provided in said lease, and did not bring this suit until long after said lease had expired and all his rights of possession under the same had ceased and made no claim for damages against said defendants until long after he so took possession of said real estate'', etc. The demurrer to this paragraph of the answer was sustained and an exception to the ruling properly saved. Upon the issues thus joined there was a jury trial and verdict for appellee in the sum of $800. Judgment on the verdict followed.

The errors relied upon for reversal are in sustaining the demurrer to appellants' second paragraph of answer, and in overruling their motion for new trial, upon the grounds that the verdict of the jury is contrary to law and is not sustained by sufficient evidence, that the damages assessed are excessive, and that the court erred in giving to the jury instructions Nos. 1 to 13, and in refusing to give appellants' requested instructions Nos. 1 to 6.

In presenting the first error relied upon appellants contend that the second paragraph of answer constituted a complete and valid defense to the first and second

1. paragraphs of the complaint. Conceding that all the matters set up in the answer are true yet we do not consider that they show a waiver of a right of action for the breach of the contract averred in the complaint or indicate any purpose on appellee's part not to stand on such right. Appellant, by the terms of his lease, impliedly covenanted with appellee to put him in possession on March 1, 1908, and having failed so to do, appellee would have been justified if he had refused to be bound by its terms and had rescinded the contract. Instead, however, he took possession of the lands for so much of the term as the lessors furnished him. It was said in the case of *Huntington Easy Payment Co.* v. *Parsons* (1907), 62 W. Va. 26, 57 S. E. 253, 9 L. R. A. (N. S.) 1130, 125 Am. St. 954, ''Failure of the

lessor to give possession, or eviction of the lessee after he has taken possession, confers upon the latter the right to treat the contract as rescinded and refuse to take the premises or pay the rent. The lessor's breach unless waived in some way, will defeat any remedy he may invoke for the enforcement of their contract. But the lessee is not bound to take possession. He may stand upon his contract and recover damages for the breach. He may demand so much of the land, or all of it, for so much of the term as the lessor is able to yield to him, and damages for what they have not or cannot give. He has a right of election. He cannot be compelled to take and pay for less than he contracted for, but he may take less, if he sees fit to do so, and recover damages by way of compensation for what he cannot get. * * * To have obtained the benefit of its entire contract for sixty months, five years, with the exception of only four or five months, it would have cost the lessee nothing more than the mere acceptance of the tender of possession and use, made by the lessors. Its acceptance of this would not have been a waiver of any right of action it had for general or special damages. By accepting, at the time the offer was made, it would have taken from the lessors nothing more than it was entitled to have, not even all it was entitled to have. The rendition by the lessee of this portion of what they had bound themselves for would have constituted no consideration for a release or waiver on the part of the lessee; nor could it have in any sense constituted an estoppel." Appellee clearly had the right to take possession of the premises for the remainder of the term of the lease after the previous tenant moved away, without losing any of his rights to bring an action for damages occasioned by such tenant's unlawful holding over. The fact that he took possession for the remainder of the term is not one of which appellant can in any way complain, for by farming the premises and using reasonable efforts to make the most of the leased premises, in the condition in which they were

left by the unauthorized acts of the previous tenant, he thus minimized the damages for which appellant would be liable, who otherwise might have been held liable for keeping him out of the entire term of the lease. The facts averred in the second paragraph of answer do not constitute a waiver of the right to demand damages occasioned by illegal acts prior to his entering into possession of the premises, nor would they constitute an estoppel. See, also, Sutherland, Damages §88. *Garard* v. *Yeager* (1899), 154 Ind. 253, 259, 56 N. E. 237; 29 Am. and Eng. Ency. Law 1105, and cases cited. It is contended also by appellants that the verdict is contrary to law, in that their duty under the lease did not extend beyond that of giving a right to possession on March 1, 1908, or warranting that they had the right to possession at that time, and they insist that appellee's right of action was against the tenant holding over, and not against the landlord. Their position is supported by the decisions in certain states which follow what is known as the American rule in regard to the landlord's duty to put the tenant in possession, but this State follows what is known as the English rule, that any lessor impliedly covenants with the lessee that the premises demised shall at the beginning of the term be open to entry by the lessee, and that it is the duty of the lessor to oust any one who at that time may be in possession. *Hammond* v. *Jones* (1907), 41 Ind. App. 32, 83 N. E. 257. The reason for this rule is well expressed in the following language from the opinion in the case of *Sloan* v. *Hart* (1909), 150 N. Car. 269, 134 Am. St. 911, 63 S. E. 1037, 21 L. R. A. (N. S.) 239. ''The theory of the English courts, and those of this country following their decisions, is that when a lease is made, the beginning of which is fixed at some future date, it is within the contemplation of the parties and a part of their understanding, without which the lease would not have been made, that when the time comes for the lessee to take possession, according to the lease, the lessor shall have

the premises open to the entry of the lessee, and that the latter is not liable for rent until he is afforded an opportunity to enter, and is under no obligation to maintain an action against a tenant holding over to recover possession. * * * The English rule appears to us to be better founded in reason and more consonant with good conscience, sound principle, and fair dealing." See, also, *Herpolsheimer* v. *Christopher* (1906), 76 Neb. 352, 111 N. W. 359, 9 L. R. A. (N. S.) 1127 and notes, 14 Ann. Cas. 399 and note. *Huntington Easy Payment Co.* v. *Parsons, supra;* note, *Sloan* v. *Hart* (1909), 134 Am. St. 916, *et seq.*

Appellee introduced evidence to show that the previous tenant, during the period of his holding over, had pastured the fields and hauled over them when they were wet and muddy, and had thus put them into such a physical condition that the land could not be properly prepared for planting, and could not be properly cultivated, that because of such condition, he obtained a very poor stand of corn, and a very poor crop; also that the tenant's hogs had rooted up the grass in the pasture during this period, and had thus practically rendered the pasture worthless for the summer; also that because he was prevented from beginning work on the land during the time from March 1 to March 23, he was unable to get all his crops planted, and was forced to let some of the land remain idle, and some of the crops planted were so late that the yield was greatly lessened; also that because of the late start in farming operations occasioned by his being kept out of possession, he was compelled to purchase certain new farming implements; that he paid out for rent of a house and three acres of land for twenty-three days $220; that during the summer appellants with teams and plows entered upon the land and committed a trespass. The trial court permitted witnesses acquainted with the farm to testify concerning the normal production of the land in the past, the average cost of production of crops such as appellee planted, and the average yield and

value of the crops raised in 1908 by appellee on the portions of the farm which had been damaged by the acts of the previous tenant while holding over, as well as on the other parts of the farm. It is earnestly contended by appellant that this evidence was not admissible, and that the court erred in failing to apply the proper measure of damages in this case.

The general rule is that, in an action by the lessee to recover for failure of the landlord to give possession, the lessee is entitled to the difference between the agreed 3. rent and the actual market rental value of the premises for the term, plus such special damages as have been directly and necessarily occasioned by the defendant's wrongful act or default, but he can not recover what he might have made on the premises during the lease, or his probable profits. Sutherland, Damages (3d ed.) §864; *Herpolsheimer* v. *Christopher, supra; Hall* v. *Horton* (1890), 79 Iowa 35, 44 N. W. 569; *Robrecht* v. *Marling* (1887), 29 W. Va. 765, 2 S. E. 827; *Cleveland, etc., R. Co.* v. *Mitchell* (1899), 84 Ill. App. 206; *Sloan* v. *Hart, supra.* Where the contract is such that the rent is to be paid by a share of the crops raised, and the profits can be said to be an element contemplated by the contract, it is proper to consider the probable value of crops which would have been raised, and the profits therefrom ascertained with reasonable certainty, in order to ascertain the damages. *Chew* v. *Lucas* (1896), 15 Ind. App. 595, 596, 43 N. E. 235, and cases cited. The trial court seems to have allowed the case to be tried on the theory that the latter rule governed in this case.

We think, however, that since this was a contract 4. calling for cash rent, the proper measure of damages in the present case, the rent having been paid, would be the difference between the actual rental value for the entire term of the land leased, and the actual rental value for the remainder of the term of the land in the condition in which the acts of the former tenant during his time of holding over had left it, and at the time when the appellee took

possession, plus any special damages allowable under the general rule as occasioned by the defendant's wrongful act or default.

In arriving at the value of the use of the land for the time it was occupied by appellee, the jury might consider in evidence the condition of the farm at the time appellee actually obtained possession; the effect, if any, upon the value of the lease, of the delay in giving possession, when considered with what use the parties intended should be made of the farm; any depreciation of the value of the crops raised during the term of the lease, resulting from a yield below the normal in quantity and quality, and occasioned by the unfavorable condition of the soil and the lateness of planting, if such condition of the soil and lateness of planting were directly occasioned by the landlord's failure to give possession at the beginning of the term, or the acts of his tenant during the time of holding over; and all similar matters which tend to show any depreciation in the value of the lease occasioned by the lessor's wrongful act or default. These matters are proper to be considered, however, only as tending to show diminution in the rental value of the land, and not as in themselves elements of damages. *Prestwood* v. *Carlton* (1909), 162 Ala. 327, 50 South. 254; *Snodgrass* v. *Reynolds* (1885), 79 Ala. 452, 58 Am. Rep. 601; *Shutt* v. *Lockner* (1906), 77 Neb. 397, 109 N. W. 383.

The lessee cannot recover as damages the loss of profits or the value of the crops which he might have raised if he had obtained possession at the beginning of the term, which seems to have been taken as the basis of damages below.

So much of the evidence objected to as tends to show the rental value of the premises from the time appellee went into possession until the end of the term, together with the amount which appellee was required to pay as a result of the default on appellants' part was properly received. Most of the evidence objected to was admitted on the theory that

appellee could recover directly any loss of crops sustained, and was not proper for this purpose. On the other hand, many of the facts testified to would have been proper for the purpose of showing a lessened rental value of the leased premises caused by depreciation in the value of the crops raised, occasioned by the landlord's wrongful acts or default.

The instruction, "If you find from a fair preponderance of the evidence that the plaintiff and defendants entered into the contract of lease as set forth in the plaintiff's

6. complaint herein and on March 1, 1908, when said term of lease was to begin, the defendants failed or refused to accord to the plaintiff possession of said land and that the plaintiff did not obtain possession of said leased premises until March 23, 1908, then I charge you that the plaintiff is entitled to recover in this court for any loss of crops that he may have sustained by reason thereof," is erroneous, because it does not state the correct rule of law for measuring the damages recoverable by appellee.

7. Instruction No. 11 given also at the court's own motion is erroneous for the reason that the expense appellee was entitled to recover was the reasonable rental value under all the circumstances of the case for other premises occupied by him during the time he was prevented from obtaining the leased premises and not what he voluntarily paid. Under this instruction appellee would have been entitled to recover any expense regardless of its reasonableness or fairness.

The instructions asked by appellant on the subject of waiver were properly refused, as appears from the discussion of the same question when the sufficiency of the answer was considered. The incorrectness of the tendered instructions to the effect that it was the duty of appellee to eject the former tenant holding over and not that of appellant also appears in the discussion of the same subject-matter in an earlier part of the opinion. It is apparent from the

evidence introduced over the objection of appellant and from the instructions given that the theory upon which the damages were assessed below was inconsistent with the principles here announced, and the judgment must therefore be reversed and a new trial granted.

NOTE.—Reported in 103 N. E. 354. See, also, under (1) 24 Cyc. 1050; (2) 24 Cyc. 1051; (3) 24 Cyc. 1052; (5) 24 Cyc. Anno. 1052. As to measure of damages when lessee is evicted or prevented from taking possession, see 100 Am. Dec. 428. As to covenants implied on part of landlord, see 32 Am. Dec. 355; 43 Am. Rep. 227. As to whether the acceptance of premises by lessee after contract time constitutes waiver of damages for failure of lessor to put him in possession, see 9 L. R. A. (N. S.) 1131. On the implied duty of lessor to put lessee in possession of leased premises, see 9 L. R. A. (N. S.) 1127, 21 L. R. A. (N. S.) 239; 14 Ann. Cas. 402.