## MILLER, ADMINISTRATRIX, v. READY.

[No. 9,013. Filed April 22, 1915. Rehearing denied June 4, 1915.]

1. LANDLORD AND TENANT.—*Lease.—Implied Covenant for Possession.—Breach.—Rights of Lessee.*—Where a lease expressly provided that the term was to commence on a certain day, such provision amounted to an implied covenant of the lessor to put the lessee in possession on such day, and that the premises would not at that time be in the possession of another; so that the fact that a former occupant had not completely vacated the premises by that date, in the absence of anything to show that the lessee had waived his right to possession at that time, would have warranted the lessee's administrator in treating the lease as abrogated, and in refusing to take possession or to be bound by any of the provisions of the lease. p. 199.

2. LANDLORD AND TENANT.—*Lease.—Breach of Covenant for Possession.—Waiver of Breach.*—Where a lessor's failure to place the lessee in possession on the date fixed for the commencement of the term was due to an arrangement between the lessee and the occupant then in possession, made with the knowledge and consent of the lessor, whereby such occupant might hold over if not convenient to surrender possession at the commencement of lessee's term, the administrator of the lessee's estate, on the death of lessee prior to the beginning of the term, could not treat the lease as abrogated for failure to be placed in possession at the time therein specified. p. 200.

3. EXECUTORS AND ADMINISTRATORS. — *Privity of Administrator With Deceased Lessee.—Estoppel.*—The administrator of the estate of a deceased lessee stands in privity with his decedent and has no greater rights under the lease than decedent could have had, and hence is estopped from treating the lease as abrogated by a breach of the lessor which was induced by decedent. p. 201.

4. CONTRACTS.—*Death of Party.—Effect.*—Ordinarily the death of either party to a contract does not extinguish it, unless it is of a personal character and not susceptible of performance by the personal representative of such deceased party; and in determining whether it may be performed by such representative regard must be had both to the nature of the transaction and the language in which the contract is couched. p. 201.

5. CONTRACTS. — *Termination by Death. — Leases.* — An ordinary lease of real estate is not such a personal contract as is annulled or extinguished by the death of either party thereto. p. 202.

6. LANDLORD AND TENANT.—*Death of Lessee.—Rights and Liabilities of Administrator.*—On the death of a lessee the term of the unexpired portion of his lease becomes a personal asset of the estate to be inventoried, appraised and sold as other personal property; and, until in some manner released or discharged, the administrator is bound to perform the covenants of the lease and is liable for the rents to the extent of the assets in his hands. p. 202.

7. LANDLORD AND TENANT.—*Lease.—Construction.—Personal Contracts.*—A lease of real estate does not assume the character of a personal contract so as to terminate on the death of the lessee, by reason of a stipulation therein that the premises are to be occupied by the lessee for a definite purpose and are not to be sublet, or otherwise occupied, or the lease assigned, without the written consent of the lessor, since such covenants though restrictive, are for the benefit of the lessor and may be waived. p. 203.

8. LANDLORD AND TENANT.—*Lease.—Covenant Against Assignment.—Transfer to Administrator of Deceased Lessee.*—On the death of a lessee the lease passes into the hands of the administrator as a part of the assets of the estate by operation of law, in the absence of an express stipulation to the contrary, regardless of a covenant against assignment. p. 204.

9. LANDLORD AND TENANT.—*Lease.—Construction.—Transfer by Operation of Law.*—Stipulations in a lease that the premises were to be occupied by the lessee for a specific purpose, and were not to be sublet or otherwise occupied, or the lease assigned, without the written consent of the lessor, can not be construed as to prevent a transfer of the lease by operation of law, so as to relieve the administrator of the deceased lessee's estate from liability for the rent. pp. 204, 205.

10. LANDLORD AND TENANT.—*Leases.—Construction.—Restrictive Covenants.*—Restrictive covenants in a lease, such as covenants against assignments or subletting, are not favorably regarded and are to be construed so as to prevent the restriction from extending any further than is necessary. p. 205.

11. LANDLORD AND TENANT.—*Covenant for Repairs.—Death of Lessee.—Liability of Administrator.*—Where a lease providing that all inside repairs were to be made by lessee, was repudiated by administrator of lessee's estate, and, in an action to recover the rents for the time the premises remained unoccupied, together with the expense incurred in again renting them, there was evidence to show that repairs to the interior made by lessor before procuring the new tenant were reasonably necessary, the court did not err in allowing the lessor his reasonable expenses thus incurred. p. 205.

From Probate Court of Marion County (10,463) ; *Frank B. Ross,* Judge.

Action by Michael J. Ready against Ida L. Miller, administratrix of the estate of James U. Miller, deceased. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Addison C. Harris* and *F. A. Redmond,* for appellant.

*Aquilla Q. Jones, William W. Hammond* and *Walter D. Jones,* for appellee.

CALDWELL, P. J.—On June 20, 1912, appellee and appellant's decedent joined in the execution of a certain lease, the terms of which, material to the present controversy, are as follows:

"This indenture witnesseth that Michael J. Ready, of the County of Marion, and State of Indiana, has this day demised and leased to James U. Miller, of said county and state, and to his executors, administrators and assigns, the following premises in said county and state, to wit, Number 358 South Meridian Street, in the City of Indianapolis * * * to have and to hold the same for and during the term of three years * * * from the first day of October, 1912. The said James U. Miller hereby agrees and promises to pay as rent for said premises the sum of One Hundred Dollars per month, the said rent to be paid on the first day of each month in advance * * *. The conditions of this lease are, that the premises are to be used and occupied by James U. Miller, for the sale of oil, belting and a general line of supplies, and for no other purpose; * * * that the premises are not to be sub-leased by the said James U. Miller, or occupied by other persons, or for other purposes than herein expressed, nor this lease assigned

by the said James U. Miller, without the written consent of said Michael J. Ready; * * * the lessor agrees to keep the outside of the building in repair, except the windows; the lessee agrees to make all inside repairs * * * "

James U. Miller died intestate, August 14, 1912. At the time of the execution of the lease, the premises were occupied by The White Swan Distilling Company, as appellee's tenant, which occupancy continued until several days after October 1, 1912. As a consequence, appellant, as administratrix of the Miller estate, did not acquire possession of the premises at the time fixed for the beginning of the term. After the prior tenant had vacated the premises, appellee refused to take possession, justifying the refusal on the grounds, among others perhaps, that the lessor having failed to deliver possession at the beginning of the term, the lease ceased to be binding on the estate. The premises stood idle until February 1, 1913, when they were leased to other parties at a rental of $100 per month.

Appellee commenced this action by filing a claim against the Miller estate, to recover rent for the period from October 1, 1912, to February 1, 1913, at $100 per month, and also to recover on account of certain expenses alleged to have been necessarily incurred in procuring a tenant. A trial by the court resulted in a finding and judgment in appellee's favor for $620.90.

Appellant contends that the evidence is insufficient to sustain the finding. In support of such contention, appellant advances two arguments: (1) that at the time named for the beginning of the term, under the lease, appellee did not and was not in position to place the estate in possession of the leased premises, and that as a consequence, appellant, as a representative of the estate was authorized to and did repudiate the lease, and that therefore the estate was not chargeable with any liability thereunder; (2) that by the terms of the lease, the contract thereby made was personal to James U. Miller, and terminated at his decease. There

was evidence to sustain the following further facts bearing on the first argument. Mr. Webber, president of The White Swan Distilling Company, had some fears that the occupant of the premises to which the distilling company intended to move on October 1, might purposely hold possession until the last moment, and that his company might thereby be delayed a few days in vacating the Ready premises. He, therefore, at the time of the execution of the lease, or at some subsequent time, in the presence of Ready, apprised Miller of these facts, whereupon Miller said: "Any time you folks get out is all right. I don't care how long you stay, as I don't have to move out of the corner. * * * As long as I don't have to move, you can stay as long as you want to; it don't make any difference to me; I don't need the room." Ready thereupon or thereafter instructed Webber to deliver the keys to Miller or to The Miller Oil Company, the latter being the name under which Miller conducted his business. The distilling company removed all its property, except the safe, from the Ready room on October 1. The safe was moved out October 3. On October 4, Webber tendered the keys at the office of The Miller Oil Company, but the young woman in charge, acting under the instructions of the attorney for the estate, declined to accept them. On October 9, Webber tendered the keys to the administratrix, but she also refused to accept them. No representative of the estate at any time demanded or sought to gain possession of the room. There was no evidence of anything said or done at any time, by which whatever status was created by the arrangement made between Miller and Webber was nullified or changed.

By the terms of the indenture, appellee demised and leased the described premises to Miller for a term expressly stipulated to commence October 1, 1912. Appellee there-

1. by impliedly covenanted to put Miller in possession of the premises at that time, and as a necessary incident that there should be no impediment to him or his rep-

resentatives taking possession, as that at such time the premises should be open to occupancy and not in possession of another. This implied covenant was not discharged. By reason of the occupancy of the distilling company, appellee was not in a position to discharge it. These facts considered alone constituted such a breach of the implied covenant as to justify appellant in treating the contract as abrogated, and in refusing thereafter to take possession or to be bound by any of the provisions of the lease. *Cleveland, etc., R. Co.* v. *Joyce* (1913), 54 Ind. App. 658, 103 N. E. 354; *Voss* v. *Capital City Brew. Co.* (1911), 48 Ind. App. 476, 96 N. E. 11; *Hickman* v. *Rayl* (1877), 55 Ind. 551; *Huntington, etc., Co.* v. *Parsons* (1907), 62 W. Va. 26, 57 S. E. 253, 125 Am. St. 954, 9 L. R. A. (N. S.) 1130; 1 Tiffany, Landlord and Tenant 1147; 24 Cyc. 1050.

While, by giving effect to the terms of the lease alone, it was appellee's duty to deliver possession of the premises October 1, and Miller or his representative had a right to possession on that day, and failing to acquire it, to repudiate the lease, nevertheless, we can not ignore the arrangement made between Miller and Webber, with the knowledge and consent of appellee. It is not necessary to our purpose that we follow the arguments into a determination of the particular kind of a tenancy, if any, that was thereby created in the distilling company. There was no valuable or legal consideration for the agreement made between Miller and Webber, and the specification of the time during which the distilling company might remain in possession was entirely indefinite, and for these reasons, doubtless the distilling company could not have held possession as against Miller, or his representatives for any stated time. But here, appellant is asking that it be determined that said lease became nonenforceable as against the Miller estate, and that the estate be relieved from his solemn obligation to pay rent, by reason of the breach of an implied covenant to deliver possession, and in the face of the fact

that Miller himself induced the very breach of which the estate is now seeking to avail itself. Miller agreed that the distilling company might hold over. Appellee knew of such agreement. He was thereby induced to feel secure in permitting Miller and the distilling company to arrange between themselves for the transfer of possession and in taking no steps to require that the premises be vacated by October 1. It would have been grossly inequitable to permit Miller, had he lived, to view passively a situation which he had created, and by reason of a, delay which he authorized, in getting a possession which he did not seek, to declare the lease no longer of effect. Equity and good conscience would have required of him that he undertake no such drastic step until by a prior notice, affording a reasonable time, he had given appellee opportunity to relieve himself from his situation of fancied security so created. Appellant stands in

3. privity with Miller, and her rights are not superior to what his would have been had he lived. Under the circumstances, we hold that appellant is estopped by the conduct of her predecessor in interest from asserting the invalidity of the lease, based on a breach of such implied covenant. *Templer* v. *Muncie Lodge, etc.* (1912), 50 Ind. App. 324, 97 N. E. 546; *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320, 327, 328, 70 N. E. 363; 16 Cyc. 805. As having some bearing on the question, see also, note to *O'Connor* v. *Timmerman* (1909), 24 L. R. A. (N. S.) 1063; *Garbutt* v. *Mayo* (1907), 13 L. R. A. (N. S.) 98, note.

Turning our attention to appellant's second argument, ordinarily the death of either of the parties to a contract does not extinguish it, if it is of such a nature that it

4. may be performed by the personal representative. *Williams* v. *Butler* (1915), 58 Ind. App. 47, 105 N. E. 387, 107 N. E. 300; *Cox* v. *Martin* (1897), 75 Miss. 229, 21 South. 611, 65 Am. St. 604, 36 L. R. A. 800; *Day* v. *Worcester, etc., R. Co.* (1890), 151 Mass. 302, 23 N. E. 824. Thus, where the work contemplated by the contract does not re-

quire the services or superintendence of the promisor in person, his death or disability does not terminate the contract, as there may be performance by proxy. In determining whether it may be so performed, and consequently in ascertaining the character of the contract, regard must be had not only to the words in which the contract is expressed, but also to the nature of the transaction. Bishop, Contracts §§603, 860. Thus, where the performance of an executory contract requires the services of a person of special characteristics or peculiar skill or taste, and a person is chosen to do the work, either expressly or presumably by reason of his possessing such attributes, a contract so arising ordinarily terminates with the death of the person so employed. Such contracts are sometimes denominated contracts for personal services. The following are examples: Contracts of authors to write books; of attorneys to render professional services; of physicians to cure particular diseases; of teachers to instruct pupils; and of masters to teach apprentices a trade or calling. 1 Beach, Contracts §231. See, also, *Campbell* v. *Faxon* (1906), 5 L. R. A. (N. S.) 1002, note. But an ordinary lease of real estate is not such a personal contract as is annulled or extinguished by the death of either of the parties thereto. In case of the death of the lessee, the term or the unexpired portion thereof becomes a part of the personal assets of the estate, to be inventoried, appraised and sold as other personal property. Until in some manner released or discharged, it devolves upon the administrator to perform the covenants of the lease, and he is liable for the payment of the rent reserved, to the extent that he has assets in his hands. *Smith* v. *Dodd* (1871), 35 Ind. 452; *Cunningham* v. *Baxley* (1884), 96 Ind. 367; *Schee* v. *Wiseman* (1881), 79 Ind. 389; *Drummond* v. *Crane* (1893), 23 L. R. A. 707, note; *Wilcox* v. *Alexander* (1895), 32 S. W. (Tex.) 561; *Alsup* v. *Banks* (1891), 68 Miss. 664, 9 South. 895, 24 Am. St. 294, 13 L. R. A. 598; 1 Tiffany, Landlord and Tenant 352; 24 Cyc.

1340; 18 Cyc. 312; Schouler, Executors and Administrators §223.

It is apparent from a consideration of the foregoing principles, aside from any effect that must be given to the special contents of the indenture, that in the case at

7. bar, the decease of Miller did not terminate the contract of lease, or relieve his estate from the obligation to pay rent as covenanted. Appellant, however, appeals to the terms of the contract, and argues that since the lease stipulates that the premises were to be occupied by Miller for only a certain purpose, and that the premises were not to be subleased or occupied by other persons or for other purposes, or the lease assigned, without the written consent of Ready, the parties must have contemplated a contract personal to Miller, and to terminate at his death. The argument is that since the right to occupy was limited to Miller, the parties must be held to have intended a termination of contractual rights and obligations should occupancy by Miller be rendered impossible by his death. Giving full weight to the argument in other respects, it is fallacious in this, the stipulations do not prohibit occupancy by other persons than Miller or the conduct of other enterprises than that named, or the transfer of the whole or a part of the term, but rather that these things may not be done without the consent of Ready. It follows that any or all of them might be done with such consent. Thus, assuming the argument to be sound in other respects, we would be forced to the conclusion that the contract was personal to Miller not absolutely, or at his election or the election of those who represent him, but rather at the election of Ready. It is well to bear in mind that in this contest, Ready is not denying the rights of some one who claims to hold by assignment or otherwise from Miller—that is, Ready is not seeking to enforce the restrictive covenants of the lease, but rather here Miller's representative is endeavoring to enforce such covenants, and thereby to treat the lease as personal

to Miller, while Ready, by his attitude, is indicating a purpose and election to treat it otherwise. Restrictive covenants, respecting the use to which the premises may be put and the transfer of the lease or of any interest therein, are construed as made for the benefit of the lessor rather than the lessee. It follows that such covenants may be waived by the former. *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146, 152, 70 N. E. 149; *Edmonds* v. *Mounsey* (1896), 15 Ind. App. 399, 44 N. E. 196; 1 Tiffany, Landlord and Tenant 932, 941; 24 Cyc. 963, 968, 1063. That such rule is sound in principle, as applied here, appears from a further consideration of the lease contract. Among its provisions is one to the effect that on a failure to pay rent when due, or on a failure to comply with any of the conditions of the lease, it shall terminate at once, without notice, etc. If such were not the rule, the lessee, desiring to be free from the obligations of the lease, might, for the express purpose of terminating it, wilfully violate its covenants, and thus profit from his own wrong. Moreover, the process by which a contract of lease passes into the hands of an administrator as a part of the assets of the estate on the decease of the lessee is classed as a transfer by operation of law. It seems to be practically the universal rule that a transfer by operation of law in the absence of an express stipulation in that regard, is not within the provisions of the lease against assignment. 1 Tiffany, Landlord and Tenant 927, *et seq.;* 24 Cyc. 970; *Charles* v. *Byrd* (1888), 29 S. C. 544, 8 S. E. 1.

Appellant concedes the foregoing propositions, but contends in effect that such a transfer is prohibited by the lease. To us, however, it seems that appellant's counsel in the process of proving his point is forced to assume it. There certainly is no express stipulation of the lease here prohibiting an assignment by operation of law. Neither do we believe that such a result may be accomplished by construction. The rule, as applied to re-

strictive covenants of leases on the subject of transfers, is thus stated: ''Covenants against assignment or underletting are not favorably regarded by the courts, and are liberally construed in favor of the lessees, so as to prevent the restriction from extending any further than is necessary.'' Jones, Landlord and Tenant §464. ''Restrictions of this character, upon alienation by the lessee, are not favored and are it is said, to be construed strictly, and a particular mode of alienation is, it has been stated in a leading case on the subject, not to be regarded as prohibited unless it is 'by words which admit of no other meaning.' '' 1 Tiffany, Landlord and Tenant 921, citing *Crusoe* v. *Bugby* (1771), 3 Wils. 234, 2 W. Bl. 766. ''They are construed with the utmost jealousy and very easy modes have always been countenanced for defeating them.'' *Riggs* v. *Purcell* (1876), 66 N. Y. 193. See, also, *Lake Erie, etc., R. Co.* v. *Marott* (1913), 52 Ind. App. 332, 100 N. E. 865. We do not believe that by the application of these rules, any language of the lease here may be reasonably construed as prohibiting a transfer by operation of law. We call attention again that here the contest is not being waged by the lessor for the purpose of enforcing the covenant against assignment. It would seem that cases involving such a controversy are scarcely applicable here. For an instructive case of the latter kind, and a note in point, see *Gazlay* v. *Williams* (1908), 147 Fed. 678, 77 C. C. A. 662, 14 L. R. A. (N. S.) 1199. There is evidence to sustain the finding.

Appellee, by his claim, sought to recover, as indicated, four months rent at $100 per month; $50 paid real estate agents for their services in procuring the new tenant; expenses alleged to have been necessarily incurred in making inside repairs, in order to procure such tenant, $170.90; and expense of outside repairs, $54. The court allowed the first three items, and disallowed the last. Appellant, in contending that the amount of recovery is

too large, directs the argument against only the third item, as to which it contends that the measure of damages cannot be made to cover permanent improvements to the real estate. It is not claimed that there was an absence of evidence to show that these repairs were reasonably necessary in order that a tenant might be procured. While it is true, that the repairs complained of were in the nature of permanent improvements, yet there is a provision of the lease that "the lessees agree to make all inside repairs." If reasonably necessary in order that a tenant might be procured, and hence reasonably necessary to the occupancy of the building, then it is not a violent presumption that the lessee here contemplated making such repairs at his own expense, when he accepted the lease. It has been held, under circumstances very similar to those presented here, that the lessor is not bound to rent the premises to other persons or to endeavor to do so, but that he may stand on his contract and recover the stipulated rent for the entire term. *Patterson* v. *Emerich* (1899), 21 Ind. App. 614, 52 N. E. 1012. However, it is advantageous to the defaulting lessee, for the lessor to procure other tenants, if possible, and thus reduce the amount of damages he may recover, and it would seem to be commendable for him to do so, and that the lessee or his representatives should not be heard to complain of his honest efforts to that end. *Alsup* v. *Banks, supra.* Here the repairs apparently were necessary in order to procure a tenant who would pay the same rent that the lessee agreed to pay. It would, therefore, seem proper to allow the lessor his reasonable expenses to that end. Expenses in making repairs were allowed as a part of the recovery in *Higgins* v. *Street* (1907), 19 Okl. 45, 92 Pac. 153, 13 L. R. A. (N. S.) 398, 14 Ann. Cas. 1086. An instructive note accompanies that case. See, also, 13 Cyc. 78; 24 Cyc. 923.

Under all the circumstances, we hold that the court did not err in allowing the expense of said repairs. Other

assignments in the motion for a new trial are waived, there being no point directed to them. Judgment affirmed.

NOTE.—Reported in 108 N. E. 605. As to covenants implied on part of landlord, see 32 Am. Dec. 355; 43 Am. Rep. 227. See, also, under (1, 2) 24 Cyc. 1050; (3) 18 Cyc. 212; (4) 9 Cyc. 631; (5) 24 Cyc. 1340; (6, 8) 18 Cyc. 312; (7) 24 Cyc. 1340, 970, 968; (9) 24 Cyc. 970; (10) 11 Cyc. 1077.