## FOX REALTY CO. v. MONTGOMERY WARD & CO.

### No. 7702.

Circuit Court of Appeals, Seventh Circuit.

Nov. 19, 1941.

Rehearing Denied Feb. 3, 1942.

John A. Barr, Stuart S. Ball, Fred T. Barrett, and Francis H. Monek, all of Chicago, Ill. (Ora L. Wildermuth, of Gary, Ind., of counsel), for appellant.

Guy Colerick, Frank E. Corbett, and James P. Murphy, all of Ft. Wayne, Ind. (Louis F. Niezer, of Fort Wayne, Ind., of counsel), for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment declaring a lease between plaintiff as lessor and defendant as lessee in full force and effect. The facts are without substantial dispute; the controversy between the parties has to do largely with the legal effect of certain definite events, plaintiff contending that the lease remains in full force and effect and defendant that it has been rightfully cancelled because of default of the lessor.

By the original agreement dated December 17, 1936, and a supplement dated February 25, 1937, plaintiff leased to defendant certain premises for twenty years commencing July 1, 1937. Both contracts were actually executed April 27, 1937. The property, a three-story building and basement, leased for retail store purposes, was not reasonably available for such use until substantial alterations and improvements should be made. The estimated cost of these was $147,000; of this plaintiff was to supply $100,000 and defendant $47,000.

The lease provided that the landlord should deliver exclusive possession on or before July 1, 1937, but that if delay should occur, beyond the landlord's control, in obtaining possession from tenants or otherwise, the effective commencement date of the lease should be postponed until the landlord should give "exclusive possession" to the lessee, provided, however, that if the lessor should not deliver such possession on or before February 15, 1938, then the tenant might either cancel the lease or extend further time to the landlord within which to deliver possession but that the tenant's right to cancel should continue during any such extended time.

By another paragraph, actual and exclusive possession was not to be deemed delivered to the lessee until fifteen days after evidence of title, plat, and certain consent agreements, "all satisfactory to the tenant," should have been delivered to the latter. The parties, at liberty to define exclusive possession as they might see fit, by this language in their formal contract, prescribed that it should include not only physical possession but also delivery of satisfactory title and consent agreements.

Paragraph 15 of the contract provided that the lessor would furnish within thirty days, or such other time as the tenant might request, an abstract of title extended to date and showing merchantable title, the lease of record and a condition of title such as represented by the lessor; an engineer's survey of the premises and improvements, and properly executed written consents satisfactory to the lessee, wherein the holders of any liens against the premises consented to the lease and agreed that the tenant should "not be disturbed in its possession of the premises for any reason other than a default by the tenant which would entitle the landlord to terminate this lease." The engineer's survey was supplied.

Of essential importance is the question whether plaintiff did furnish an abstract and consent agreements by lienholders as required. The negotiations between the

712

parties were by letter. Consequently there is little cause for dispute as to what happened. The abstract of title was not supplied within thirty days, but defendant continued to insist upon its delivery after that date. On August 10, 1937, it received for the first time an abstract, extended only to August 18, 1927. On January 12, 1938, it received an abstract continued to January 28, 1937. Plaintiff did not at any time prior to the alleged cancellation on March 15, 1938, deliver an abstract brought down to the proper date or including a showing of the lease or one to which defendant had not seen fit to interpose objections, which on their face appear to be reasonable, though, perhaps, not of vital importance.

At the time of the execution of the contracts the property was encumbered with a mortgage for $500,000 in favor of the Prudential Insurance Company which, after September 1, 1937, was in default. Plaintiff had instituted negotiations with the Northwestern Mutual Life Insurance Company to refinance this mortgage with a new one aggregating $758,000. The Northwestern made a commitment for the loan, but this commitment was never carried into execution and the refinancing never occurred. Plaintiff at no time secured a consent agreement from the lienholder as it was bound to do under the agreement.

Letters concerning the abstract were written by defendant in the months of May, July, August, September and December, 1937, and as late as January 11, 1938, defendant wrote plaintiff requesting the document and directing attention to the necessity of plaintiff's supplying the same in order to comply with its contract. It received an abstract on the following day and on January 24, returned it with objections and requested its continuation. On February 9, 1938, it again wrote plaintiff requesting that it supply title evidence as contracted and on March 4 made a final formal demand that plaintiff comply with its contractual obligations in this respect. Following this, on March 15, 1938, no further title evidence having been submitted, defendant wrote plaintiff: "As you have not delivered to us satisfactory title evidence, consent agreements and actual and exclusive possession of the above designated premises as provided by the lease between yourself as landlord and this company as tenant, dated December 17, 1936, and amended by a supplemental agreement dated February 25, 1937, we hereby cancel said lease, as amended."

After expiration of some two weeks, plaintiff tendered an abstract with documents claimed to cure the objections but not showing the lease or extended to date. It also tendered a consent agreement from the Northwestern. The District Court concluded that under these facts plaintiff had substantially complied with its contract and with the requirement that it deliver exclusive possession. In view of the stipulation of the parties and the self-speaking contents of the correspondence, it seems clear that the legal effect placed by the court upon the events was unjustified. The parties, by their voluntary contract, had fixed their obligations and rights. They had defined exclusive possession as including physical possession, delivery of merchantable evidence of title, extended to date and including the lease, and consent agreements, signed by the lienholder, "satisfactory" to the defendant. Irrespective of whether the abstract submitted by defendant disclosed merchantable title, which is doubtful, it is clear that it was insufficient to meet the requirements of the contract. The last abstract tendered was continued to a time approximately four months short of the recording of the lease. Plaintiff supplied no abstract of title covering any of the period thereafter. The lease was not shown and there was no certificate of any abstractor that after January 27, 1937, the title remained as it then was or that no liens had attached. What plaintiff did was not what it had promised to do. Its failure to comply with that promise was fatal. Webb et al. v. Consolidated Oil Co., 5 Cir., 100 F.2d 865.

Nor has plaintiff complied with its obligation to deliver the specified consent agreements from lienholders. The mortgage of $500,000 held by the Prudential was in default. Clearly this was a lien and defendant had specified that before its lease should become effective, a consent of certain specified form should be obtained from all lienholders. This was an entirely reasonable provision, for defendant was about to enter upon a long term lease of the premises and to expend substantial sums for the improvement thereof. It was not reasonably to be expected of it that it should proceed upon such a substantial undertaking without consent of the character mentioned. Such a document was never obtained although the mortgage remains a lien of record.

It is insisted by plaintiff that in view of the fact that the Northwestern had made a

commitment to refinance the mortgage by a new one for $758,000, it was unnecessary to obtain a consent agreement from the Prudential Insurance Company. But the Northwestern was not yet a lienholder. The Prudential was still the mortgagee and the mere fact that it was contemplated that a new mortgagee would replace it did not relieve plaintiff with respect to its obligation to obtain consent from the lienholder. Moreover the commitment of the Northwestern was conditional, subject to approval of the title and execution of the mortgage. It effectuated no replacement or substitution of lienholder and as a matter of fact the Northwestern never became the mortgagee. Plaintiff, therefore, has utterly failed to show compliance with its contractual requirement in this respect.

It follows, therefore, that though plaintiff formally tendered to defendant the physical possession of the property, in January, 1938, it did not complete its obligation, for exclusive possession is defined as including not only physical possession but also evidence of title and consent agreements, both of which were lacking. Physical possession of the property to be followed by substantial expenditure of money for improvements was of no avail to defendant until and unless it was sure that it might safely proceed with its projected investment in reliance upon an abstract as specified and consent agreements from lienholders as provided.

Plaintiff insists that by consenting to continue negotiations after the expiration of thirty days provided for delivery of an abstract defendant has waived its right to insist upon cancellation. True, the parties did not adhere to the thirty days' extension and continued their negotiations after expiration thereof. But the contract contemplated such action, and recited that if the landlord should be unable to give possession as originally contemplated, the time might be extended until February 15, 1938. Consequently the only pertinent inquiry in this respect is as to whether after the expiration of the thirty days and before February 15, 1938, defendant so conducted itself as to raise an estoppel to exercise its right of cancellation or to create a waiver on its part of the right to cancel.

The evidence bearing upon this inquiry is likewise undisputed. Defendant, throughout the summer and fall of 1937, was constantly insisting upon submission of proper evidence of title. It at no time indicated any willingness to waive any part of plaintiff's obligation in this respect. On the contrary, throughout the period, it repeatedly requested submission of title evidence and as late as January 24, 1938, protested that plaintiff had not complied with the contract and that the abstract must be continued to date and returned for further examination. There is nothing in the letters of defendant, which speak for themselves, which justifies in the slightest degree an inference upon the part of plaintiff that defendant was waiving any performance. Nor do we find that any different situation exists with regard to the failure to deliver consent agreements. As late as January 24, 1938, defendant wrote plaintiff that it did not believe that it would be adequately protected without consent from the Prudential. It prepared and enclosed a form of consent to be executed by that company and requested that it be signed and returned. Plaintiff failed utterly to comply. In view of these express statements of defendant's attitude toward both the evidence of title and the consent agreement, there is nothing in the record to substantiate a conclusion of waiver upon the part of or estoppel against defendant. A waiver arises from an intentional relinquishment of a known right. Barnard v. Megorden, 94 Ind.App. 391, 178 N.E. 868; Templer v. Muncie Lodge, I. O. O. F., 50 Ind.App. 324, 97 N.E. 546. The present record discloses no such relinquishment. The person asserting an estoppel must have relied to his detriment upon an act or statement of the party sought to be charged. Wright v. Fox, 56 Ind.App. 315, 103 N.E. 442. Again the record is silent as to any such evidence.

The court found and plaintiff now contends that defendant had no right to cancel the lease in the manner in which it did, but that it could cancel only under paragraph 17 of the contract. By that paragraph it is provided that if any default of the tenant "shall continue uncorrected for sixty days," after notice, the landlord "may terminate the lease" and "recover possession of the premises" and that if any default of the landlord shall occur, upon similar sixty days notice the lessee may terminate the lease. This paragraph obviously was inserted to govern the rights of the parties after possession had passed to the lessee. Its context so indicates. In other words, it established the rule governing the rights and liabilities of the parties

714

from and after the time the lease had passed into full effect by actual occupancy by the tenant. That event having never occurred, the paragraph has no relevancy to the existing relationship of the parties, for the situation creating the controversy arose before the lease ever went into effect by enjoyment of possession. Rather the relationship is governed by paragraph 19 which defines the rights and obligations of the respective parties in the preliminary stages, that is, at all times prior to the tenant's coming into possession and enjoyment of the premises. That paragraph, as we have seen, provides for delivery of possession by July 1, 1937, or, in case of delays beyond plaintiff's control, at the latest, by February 15, 1938. It expressly provides that if exclusive possession has not been obtained as defined in the contract the tenant may cancel the lease or extend the time for performance, at its option. Paragraph 17 is a general paragraph governing the rights of the parties after attachment of their rights. Paragraph 19 is a special paragraph governing the rights of the parties prior to transfer of possession. A special clause, fitting special circumstances, must prevail over a general clause, applicable generally to other situations. State v. Scott Construction Co., 97 Ind.App. 652, 174 N. E. 429; Fay v. Klots, Sup., 199 N.Y.S. 49. Defendant rightfully based its right to cancellation upon paragraph 19 rather than upon paragraph 17. In view of plaintiff's failure to comply with its contract, defendant was entitled to cancel the same. Cleveland, C., C. & St. L. Ry. Co. v. Joyce, 54 Ind.App. 658, 103 N.E. 354; Miller v. Ready, 59 Ind.App. 195, 108 N.E. 605.

The judgment is reversed.