**FIRST NATIONAL BANK OF CHICAGO and Florence Kaufmann, not individually, but as trustees of the Alfred Kaufmann Trust, Plaintiffs,**

**v.**

**PLITT THEATERS, INC., Defendant.**

**No. 89 C 6112.**

United States District Court,
N.D. Illinois, E.D.

Jan. 30, 1990.

Kenneth R. Gaines and Jeffrey DeJong, Altheimer & Gray, Chicago, Ill., for plaintiffs.

David Lynch, Rudnick & Wolfe, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This order concerns plaintiffs' motion for summary judgment. For the reasons stated herein, plaintiffs' motion is granted.

## FACTS [1]

Plaintiffs First National Bank of Chicago and Florence Kaufmann are trustees of the Alfred Kaufmann Trust ("the Trust"). The Trust owns real property located at 5405–09 Hohman Avenue in Hammond, Indiana. Some time ago, a theatre building named the "Paramount" was built on the Hohman Avenue property. The theatre was erected pursuant to a 99-year ground lease which runs from 1929 to 2028 ("the lease"). At all times relevant hereto, the Trust has been the lessor under the lease. Defendant Plitt Theatres, Inc., ("Plitt") became the lessee under the lease on December 31, 1974. Beginning in 1975, Plitt ran motion pictures at the Paramount.

In the late 1970s, Plitt stopped showing movies at the Paramount, turned off the water and electricity, and boarded-up the building. For nearly ten years thereafter, the Paramount remained idle. Plitt did no repair, maintenance, or other work to the theatre, which caused the condition of the theatre to deteriorate greatly. In October of 1985, a fire caused serious damage to the Paramount. Shortly thereafter, James Walsco, the Chief Inspector of the Hammond Fire Department, declared that the huge holes in the roof and the leaning walls made the interior of the Paramount "a hazard to life and limb." In July 1987, Jack Turner, the Hammond Building Commissioner, sent a letter to Plitt demanding that the Paramount be repaired to prevent injury from the concrete blocks which were falling from the structure. A month later, Plitt's Northern Division Vice President, Irwin A. Cohen, sent a letter to the president of Plitt's Theatre Division in which he stated that "the [Paramount] is in deplorable condition and is a hazard because of falling objects." During the time that the theatre remained idle, Plitt faithfully paid the rent owed to the Trust, which was $16,000 per year. Pursuant to the lease, Plitt also maintained insurance on the property and paid the real estate taxes which accrued during that time.

---

**1.** Aside from a few minor protestations and a few additional assertions, Plitt has not contested the Statement of Material Facts submitted by plaintiffs in support of their motion for summary judgment. Therefore, except for the few statements to which Plitt objects, the court accepts plaintiffs' Statement of Material Facts as the factual basis for deciding this motion. *See* General Rule 12(m) of the Local Rules of the U.S. District Court for the Northern District of Illinois.

On November 6, 1987, Plitt entered into an agreement with Premier Enterprises, Inc., ("Premier") by which Plitt purported to assign to Premier Plitt's interest in the lease on the property at 5405–09 Hohman Avenue. The agreement also transferred to Premier Plitt's interest in the Paramount Theatre. Under the terms of the agreement, Premier received Plitt's interests in the lease and the theatre for $1,000; Plitt agreed to pay the rent due to the Trust under the lease through May 1988.

Premier was an Indiana corporation which was incorporated on August 25, 1987, for the sole purpose of acquiring and refurbishing the Paramount. Premier had no assets. The President of the corporation, Stephen Stofko, was 18 years old. At the time he entered into the agreements with Plitt on behalf of Premier, Stofko was living with his mother, attending his first year of college, and working part-time for $6.20 per hour. He had no business experience, and he had just $2,000 in the bank. His business partner, Don Bertolo, was in a similar situation. Before Premier entered into the contract with Plitt, Stofko and Bertolo inspected the Paramount and noticed a large hole in the roof, plaster torn away from the interior ceiling and walls, four feet of water in the basement, and numerous other defects. Nevertheless, Stofko entered into the agreement with Plitt on behalf of Premier with the hope that Premier could obtain a grant to refurbish the theatre.[2]

Plitt's attorneys first notified the Trust of the assignment of the lease to Premier by a letter dated April 18, 1988. Upon receiving the letter, the Trust changed its rent ledger to identify Premier as the tenant. The Trust then sent rent notices to Premier in an effort to collect the rent due on the lease for June 1988. When Premier did not respond to the rent notices, the Trust sent a notice to Plitt requesting payment for the June rent. Plitt did not pay the June rent, and has refused to pay any rent to the Trust since May 1988. Premier, meanwhile, never formally applied for any grants to refurbish the property and eventually abandoned its interest in the Paramount, having never made any payments to the Trust. Stofko and Bertolo allowed Premier to be dissolved, and the corporation is no longer in existence.

## DISCUSSION

Plaintiffs filed this action on behalf of the Trust seeking declaratory and monetary relief against Plitt. Plaintiffs claim that under the terms of the lease, Plitt's purported assignment of the lease to Premier was null and void. Therefore, plaintiffs argue, Plitt retains all of its obligations under the lease and is liable for all the damages proximately caused to the Trust by the attempted assignment.

■ The express language of the lease supports plaintiffs' position. Article Fifteenth of the lease provides that the lessee can assign his rights under the lease only where: (1) the lessee is not in default on any of the covenants and agreements contained in the lease; and (2) the assignment is in writing and a copy of that writing is delivered to the lessor within thirty days after the date the writing is delivered to the lessee. Plitt's purported assignment clearly did not satisfy either of these criteria.[3]

First, at the time it entered into the agreement with Premier, Plitt was in breach of certain covenants in the lease regarding the maintenance and upkeep of the premises. Under Article Fourth of the lease, Plitt had the duty to maintain the

---

**2.** Jack Turner, the Hammond Building Commissioner, estimated at his deposition that it would have cost in excess of $250,000 to repair the Paramount to meet all applicable safety regulations and building codes.

**3.** The lease also provides that an assignment by the lessee discharges the lessee from its obligations under the lease only where the assignment is made "to carry into effect an absolute and bona fide sale of [the] Lessee's interest in [the] premises." Plaintiffs argue that Plitt's purported assignment to Premier was not a "bona fide" sale in Plitt's interests. Plitt disputes this characterization of the assignment. However, since Plitt has virtually conceded—as it must—that the first two requirements for a valid assignment were not met, the court need not resolve whether the assignment was "bona fide."

premises in "clean and wholesome condition" and in compliance with all health and police regulations. Plitt also was obligated to keep the sidewalk and other areas surrounding the building "safe, secure, and conformable to the lawful or valid requirements of the City of Hammond and all other public authorities." Clearly, the dilapidated condition of the Paramount at the time Plitt entered into the agreement with Premier was violative of these provisions in the lease. Secondly, although Plitt entered into the agreement with Premier on November 6, 1987, Plitt failed to notify the Trust of the purported assignment until April 18, 1988. This failure to comply with the 30–day notification requirement in Article Fifteenth of the lease also made the attempted assignment invalid.

■ Plitt admits that it failed to comply with the maintenance covenants in the lease and that it failed to notify the Trust of the assignment within thirty days as required under the lease. Nevertheless, Plitt maintains that it is no longer liable under the lease because the Trust waived its right to contest the assignment. Plitt argues that since the Trust had been fully aware of the dilapidated condition of the Paramount for several years, the Trust waived its right to object to the assignment based on Plitt's breach of the maintenance covenants in the lease. Plitt further argues that the Trust, by changing its ledger to list Premier as tenant of the Paramount, by referring to Premier as the "new lessee" in internal memoranda, and by requesting rent payment from Premier instead of objecting to the assignment, waived its right to contest to the assignment on the basis of Plitt's failure to comply with the thirty-day notice provision.

Plitt has offered virtually no case law to support its waiver argument. Plitt cites only two cases regarding waiver: *Miller v. Ready*, 59 Ind.App. 195, 108 N.E. 605 (1915), and *Page Two, Inc. v. P.C. Management, Inc.*, 517 N.E.2d 103 (1987). These cases are wholly inapposite to the instant case. *Miller* simply recognized that restrictive covenants in a lease may be voluntarily waived. The court found that as-

suming the lease at issue contained a restrictive covenant, the lessor voluntarily waived his right to enforce the covenant; the lessor did so because waiver of the covenant benefited him. 108 N.E. at 608–09. *Miller* says nothing about the circumstances under which there can be an *involuntary* waiver, which Plitt argues took place in this case.

In *Page Two*, the landlord, which had leased one floor of a building to the tenant, sought to terminate the lease when the tenant failed to comply with a lease provision requiring the tenant to pay a certain percentage of the building's utilities. The court held that since the landlord accepted rent payments after the tenant had protested the amount of its utilities charge, the landlord waived its right to terminate the lease based on the tenant's failure to pay for utilities. 517 N.E.2d at 105–06. In the instant case, the Trust never accepted rent payments from Premier after Plitt's breach of the assignment clause, which represents a critical difference from the circumstances in *Page Two*. Moreover, even if the Trust had accepted rent from Premier, this action would not necessarily have amounted to waiver of its right to contest the assignment. *See National Distillers & Chemical Corp. v. First National Bank of Highland Park*, 804 F.2d 978, 982–83 (7th Cir. 1986) (landlord's acceptance of two rent checks from purported assignee does not constitute waiver of right to object to assignment).

The biggest obstacle to Plitt's waiver argument lies in the express language of the lease. Article Twenty–First of the lease states: "No delay or omission of [the Trust] to exercise any right or power arising from any default shall impair any such right or power, or shall be construed to be a waiver of any such default, or an acquiescence therein." This provision clearly forecloses Plitt's argument that the Trust waived its right to contest the assignment by failing to object to the deteriorated condition of the theatre prior to the assignment. Furthermore, the court finds that it would be unreasonable to hold that the Trust waived its right to contest the assignment merely because some of its inter-

nal documents listed Premier as lessee and because it mailed one rent notice to Premier. Such actions are simply not sufficient to find that the Trust intentionally relinquished its right to hold Plitt bound to the lease. *See Saverslak v. Davis–Cleaver Produce Co.*, 606 F.2d 208 (7th Cir.1979) ("waiver occurs when an obligor manifests an intent not to require an obligee to strictly comply with a contractual duty"); *see also National Distillers*, 804 F.2d at 982–83. Accordingly, plaintiffs are entitled to judgment as a matter of law.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted. Plaintiff is granted the following relief:

(1) A declaration finding that Plitt's attempted assignment to Premier is null and void, and that after the purported assignment Plitt remains responsible for all of the obligations and duties set forth in the lease;

(2) A judgment in the amount of $28,000 (representing past due rent for the period from June 1988 through January 1990), plus 7% pre-judgment interest (pursuant to Article Fourteenth of the lease), plus reasonable attorneys' fees and costs associated with this action (pursuant to Article Eleventh of the lease).

IT IS SO ORDERED.