## KILBOURN v. WESTERN SURETY CO.
### No. 4175.

United States Court of Appeals
Tenth Circuit.
Feb. 27, 1951.

William Hedges Robinson, Jr., Denver, Colo. (Shuteran, Robinson & Harrington, Denver, Colo., on the brief), for appellant.

Samuel M. January, Denver, Colo. (January & Yegge, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by appellant, Jack E. Kilbourn, against John A. Shay and Paul Shay, d/b/a Shay's Used Cars of Evans, Colorado, and the Western Surety Company, surety on their bond.

The amended complaint set out the bond executed by the surety, pursuant to the provisions of Chapter 78 of the Session Laws of Colorado, 1945. The material provisions of the bond provided that the surety "shall pay all judgments and costs adjudged against said Principal on account of fraud or fraudulent representations and for any violation or violations of said law during the term of said license and all lawful renewals thereof, * * *." [1]

The first cause of action alleged that Kilbourn sold a Pontiac Sedan to the Shay-

[1] The law referred to is the Colorado Motor Vehicles Act Session Laws 1945, Chapter 78, p. 216, § 9, Colorado, Chapter 16, § 428, C.S.A.

Brothers and received in exchange a check for $2700, drawn on the First National Bank of Greeley; that payment was refused on this check because of insufficient funds; that the check was issued by Shay Brothers for the purchase of an automobile, knowing there were no funds available for its payment and with the intention and design of defrauding plaintiff of the title and possession of the automobile. Judgment was asked for the amount of the check against Shay and the surety on its bond.

The second cause of action alleged that Joe H. Burtrum of Joplin, Missouri, sold Shay Brothers two automobiles and two trucks for $6300, and received in return $1625.00 cash and three checks totaling $4675, issued on the National State Bank of Cheyenne, Wyoming, payable to Shay Brothers and signed "Bill Little"; that the checks were endorsed by Shay Brothers to Burtrum; that they were issued on a nonexistent bank; that Little and Palmer and the Shay Brothers knowingly and fraudulently issued said checks with the intent to defraud Burtrum. It was alleged that on December 16, 1948, Burtrum assigned to Kilbourn his claim with reference to these checks and that assignment was ratified by written assignment dated January 12, 1950. Judgment was asked against Shay Brothers and against the Surety.

The Surety Company admitted the status of the parties and the issuance of the bond, but denied all other allegations. It pleaded as a special defense to the second cause of action that Kilbourn was not the real party in interest. So far as material, Shay Brothers admitted the allegations of the first and second causes of action, except the allegations with respect to fraud and misrepresentation and admitted owing the money set forth in the complaint.

The Surety Company filed a motion for summary judgment which was sustained by the court, and this appeal followed.

The Surety Company contended in the trial court, as it does here, that Kilbourn's statements in his deposition, together with the allegations of the complaint, leave no disputed issue of fact, and show as a matter of law that there was no actionable fraud with respect to the transactions upon which the first cause of action was predicated. As to the second cause of action, its position is that Kilbourn was not the real party in interest.

Kilbourn's deposition, on which, in part the Surety Company's motion for summary judgment was predicated, was taken at the behest of the Surety Company. In it, Kilbourn testified that he had been doing business with Shays for about six months and had sold them approximately 15 cars; that his understanding with John A. Shay at the time he delivered the automobile referred to in the first cause of action was that he would leave the title and take the check of $2700; that if the automobile was sold, Shays would notify him and he would cash the check, and that until the automobile was sold, he would have the right to retake it at any time he saw fit. He was not questioned further about his understanding or purpose in taking a check under these circumstances. He testified that prior to this transaction he had in some instances, when he delivered cars to Shays, received immediate payment and at other times had agreed to hold their checks. In no instance, prior to the transaction here involved, were Shays' checks short. He testified that 17 days after the above transaction he came out to Colorado and found the automobile was missing from Shay's Used Car Lot; that he investigated and found it had been mortgaged and had also disappeared; that he thereupon presented the check for payment but it was returned marked "short".

With respect to the second cause of action, Kilbourn testified that he came out to Colorado between the time he delivered his automobile and the time he discoverd his automobile was missing, upon business not involved in this case and that at that time he had an oral assignment from Burtrum to collect or do "whatever he saw fit" with with respect to Burtrum's automobiles and trucks; that it was then that he was given the cash and checks referred to in his second cause of action; that he took the cash and checks and that it was thereafter discovered that they were drawn on a nonexistent bank.

At a pre-trial conference, the written assignment referred to in Kilbourn's amend-

ed complaint was admitted in evidence over the objection of the Surety Company. It appears from this assignment that it was executed after this action was commenced. By its terms, it purports to be an original assignment and a ratification of the oral assignment. It purports to make Kilbourn Burtrum's agent for collection of all sums due him from the Shays, and "to have and to hold the same to the said Jack E. Kilbourn * * * with power to collect the same in my name and as my attorney hereunto duly authorized to his own use."

In support of its position with respect to count one, the Surety Company invokes the negotiable instrument law to the effect that the check for the car was delivered upon the condition that it would be paid for upon the happening of certain contingencies, that is, if the automobile was sold and that it, therefore, never became a completed instrument until that contingency occurred; that a mere promissory representation cannot under these circumstances constitute the basis of an action for fraud and deceit.

The fallacy of this reasoning is that the liability of the Surety Company does not arise under the negotiable instrument law, but under a statute obviously intended to insure the integrity of a used car dealer in the conduct of his business, and to protect those dealing with him from fraud on his part. The statute is general[2] and is broad enough to cover loss from civil as well as criminal fraud. And that is the protection of the bond itself. In it the surety agrees to indemnify all dealing with Shay Brothers in the insured business against loss from fraudulent conduct on their part.

The only question then is do the admissions of Kilbourn's deposition, taken by the Surety Company in support of its motion, negative the possibility of a legal conclusion of fraud or prevent appellant from offering other evidence establishing fraud as that term is understood in law on Shay's part. We think not.

■ Colorado adheres to the general law that where one issues a check, there is an implied representation that he has sufficient funds in the bank at the time to cover the check.[3]

It is contended that the last stated principle of law is not applicable because the most favorable conclusion that can be drawn from Kilbourn's own deposition conclusively shows that the check was only delivered conditionally upon the sale of the automobile, and hence, no representation can be implied that at the time the check was given there were funds available to cover it. With this, we do not agree. It must be remembered that Kilbourn's deposition was taken by the Surety Company. In it he answered only such questions as he was asked. He did not, nor was he compelled to set out his own version of the transaction as he no doubt would do on a full trial of the issues. Nor do we see anything in his answers which compels the conclusion that the representations expressed or implied, on Shays' part, were that the check would be good only in the event that the car was sold.

It may well be, in fact, there is much in the transaction which strongly tends to support the conclusion that the check was given as present security for Kilbourn's car which was conditionally delivered to Shays. It is clear from the record, in its present state, that the ownership of the car remained in Kilbourn and did not pass to the Shays and that the certificate of title was likewise conditionally delivered to enable the Shays to transfer title from Kilbourn to the purchaser in the event of a sale. Kilbourn could return at any time, surrender the check and repossess himself of his property. There is a reasonable inference that having parted with possession of his property, he wanted some security therefor in the event that the property was not forthcoming when demanded. Whether his testimony will ultimately support such a theory cannot be determined on a motion for summary judgment.

■ What kind of security would a "no fund" check be? It would give no more

2. Chapter 78, Session Laws 1945 '35 C.S. A.Supp. c. 16, § 420 et seq.

3. People v. Orris, 52 Colo. 244, 121 P. 163, 41 L.R.A., N.S., 170; Bomareto v. People, 111 Colo. 99, 137 P.2d 402.

security than would a chattel mortgage on non-existing personal property. We, therefore, think that if it should be determined that this check was given as security for the automobile which was delivered to the Shays that there was an implied representation that funds were presently available to pay the check if properly presented just as there is an implied representation that personal property upon which a mortgage is given exists. It cannot be said, as a matter of law, from what was before the court on the hearing on the motion for summary judgment that it was impossible to make a case of fraud on count one.

Second Count.

■ We also conclude that the trial court erred in sustaining the motion for summary judgment on the second count. While the court did not assign any reason for its judgment, it was, no doubt, predicated on the Surety Company's contention that Kilbourn was not the real party in interest. At the time Kilbourn went to Colorado, Burtrum made an oral assignment of this claim against the Shays to him for collection. Kilbourn collected $1625 in cash and took the forged checks in payment of the balance. He then filed suit as assignee for collection of the balance of this claim represented by the amount of these checks. Colorado seems to adhere to the rule that an oral assignment of a claim for collection vests the assignee with authority to maintain an action thereon.[4]

■ It is doubtful whether the payment of $1625 and the delivery of three spurious and forged checks for the balance of the claim extinguished the claim which had been assigned to Kilbourn for collection. But it is not necessary to decide whether the oral assignment of a claim terminated with the receipt of $1625 and the forged checks so as to extinguish Kilbourn's right to maintain an action in court under the oral assignment. Burtrum did, after the suit was instituted, execute a valid written assignment in which he confirmed the prior oral assignment. This assignment was sufficiently broad to vest Kilbourn with authority to maintain the action. Thereafter he sought permission, and was granted the right to file an amended complaint setting up his authority under this written assignment. Under Colorado law Kilbourn was thereafter the real party in interest, even though the written assignment was not made until after the institution of the action.[5]

So also, under Federal Rules, whether he was the real party in interest when he first filed the claim, he became such when the written assignment was made. The new rules of Federal Procedure were adopted to unshackle the practice of law in the courts from the straight jacket of technical rules of pleading and procedure. The rules were liberalized to the end that there might be more speedy and complete adjudication of a controversy between all interested parties without regard to technicalities and mere formal technical rules. Under Rule 17(a) of the Federal Rules of Procedure, 28 U.S.C.A., Kilbourn was from and after the written assignment and the filing of the amended pleading, the real party in interest.

In line with the spirit of the new rules, it has been held that a new plaintiff may be substituted in an action at least to bring in the real party in interest,[6] even though the plaintiff who commenced the action had no right in the cause of action.[7] So it has also been held that where a person who, though in her individual capacity has no cause of action, but who nevertheless commences the action in her individual name,

4. Forsyth v. Ryan, 17 Colo.App. 511, 68 P. 1055.

5. Bassett v. Inman, 7 Colo. 270, 3 P. 383.

6. Northwestern Lumber & Shingle Co. v. United States, 10 Cir., 170 F.2d 692; United States v. Koike, 9 Cir., 164 F.2d 155, holding it was error for the trial court to refuse to allow the substitution; United States v. Saunders Petroleum Co., D.C., 7 F.R.D. 608.

7. McDonald v. State of Nebraska, 8 Cir., 101 F. 171; United States ex rel. Deavers v. Missouri, K. & T. R. Co., 5 Cir., 171 F.2d 961. See also, Owen v. Paramount Productions, D.C., 41 F.Supp. 557; Jacobs v. Pennsylvania R. Co., D.C., 31 F.Supp. 595; Keystone Tel. Co. v. United States, D.C., 49 F.Supp. 508, 509; Anno: 135 A.L.R. 325. Cf. Hackner v. Guaranty Trust Co. of New York, 2 Cir., 117 F.2d 95.

may substitute herself in her capacity as a personal representative, even though she took out letters as personal representative after the action was commenced.[8] Rule 25(c) of The Federal Rules of Civil Procedure also authorizes a substitution of an assignee of the cause of action, who takes his assignment while the action is pending.[9]

These illustrations emphasize the spirit of the New Rules. The Surety Company had the right to have a complete and final adjudication of all claims by all parties to the end that it might not be harrassed by numerous actions by different claimants. An adjudication under the amended complaint would be a complete and final adjudication. A failure on Kilbourn's part to establish a cause of action against the Surety Company on its bond on the spurious checks given in payment of the balance of the Burtrum claim would wholly and completely absolve the Surety Company from all liability to Burtrum or anyone else claiming or attempting to claim under the cause of action set out in count two. It is our conclusion that Kilbourn was the real party in interest; that the amended complaint was properly filed; and that the motion for summary judgment should have been overruled.

The judgment of the trial court is accordingly reversed and the cause of action is remanded with directions to proceed in conformity with the views expressed herein.

8. Missouri, Kansas & Texas Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L. Ed. 355.

9. See also Sternberger v. Continental Mines, Power & Reduction Co., D.C., 259 F. 293.