BEERMART, INC., Plaintiff-Appellee,

v.

The STROH BREWERY COMPANY,
Defendant-Appellant.

No. 86–1698.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1986.

Decided Oct. 29, 1986.

Rehearing Denied Dec. 16, 1986.

Stephen R. Pennell, Stuart & Branigin, Lafayette, Ind., for defendant-appellant.

F. Joseph Jaskowiak, Hoeppner, Wagner & Evans, Valparaiso, Ind., for plaintiff-appellee.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Defendant, the Stroh Brewery Company, ("Stroh") terminated its wholesale agree-

ment with plaintiff BeerMart, Inc., ("Beer-Mart") because plaintiff intentionally sold overage beer in violation of the defendant's marketing policies. Specifically, the plaintiff fraudulently repackaged outdated beer in an attempt to resell the mismarked product as fresh. BeerMart moved to enjoin Stroh from terminating the agreement on the ground that plaintiff and defendant had been transacting business for thirty-three years and that this misconduct was plaintiff's first violation of Stroh's policy. The district court granted BeerMart's motion for a preliminary injunction despite its finding that the defendant could terminate BeerMart as a wholesale distributor under the plain language of the agreement. Additionally, the court found that the plaintiff had shown the requisite irreparable harm and lack of adequate legal remedy at law. The court concluded that Ind. Code § 7.1–5–5–9 superseded the plain language of the agreement to the extent that inconsistencies exist since Section 23B of the contract incorporated Indiana law into the agreement.[1] The court interpreted Ind. Code § 7.1–5–5–9 to support its grant of equitable relief in order to maintain the status quo of the parties pending resolution of the case on the merits. We reverse. Stroh terminated BeerMart fairly under the agreement and under Ind. Code § 7.1–5–5–9.

### I.

BeerMart is a large wholesale distributor of beer and other alcoholic beverages in northwestern Indiana and has been in operation since 1949. It distributes the products of Stroh, Anheuser-Bush, Miller Brewing Company, G. Heileman Brewing Company, Pabst Brewing Company and Falstaff Brewing Company. Stroh products represented about 20.6% of BeerMart's total sales in 1985.

Ralph Smith is the president and general manager of BeerMart. Ralph Smith's brother, John Smith, was second in command and responsible for the day to day operations of the business and for management of the BeerMart warehouse. John Smith was ultimately responsible for checking code dates which indicate the beer's freshness.

Over the years, the relationship between Stroh and BeerMart has been governed by a written contract. The agreement was entered into on January 1, 1984. Section 11 of the agreement provides for immediate termination of the agreement upon the occurrence of certain events, as follows:

(A) Events giving rise to right of immediate termination. Stroh shall have the right to immediately terminate the Agreement upon the occurrence of any of the following:

. . . . .

(iv) The sale by Wholesaler of any Stroh brand known by Wholesaler to be ineligible for sale pursuant to then existing Stroh wholesaler policies relating to overage, damaged, or defective product or packaging.

. . . . .

(viii) The discovery by Stroh of any fraudulent conduct by Wholesaler in dealings with Stroh or any products manufactured and sold by Stroh....

If the retailer does not sell the beer to the consumer within the time guidelines set by the brewery, the wholesaler must take the beer off the market and dispose of it. Thus, the wholesaler sustains the loss with respect to overage beer.

On October 29, 1985, John Smith repackaged outdated Schlitz twelve packs into fifty-one Schlitz 24/12 loose packs in order to fill an order BeerMart had received from one of its customers. Schlitz beer is Stroh's product. John Smith was assisted by another BeerMart employee who also knew that the beer he was repackaging for sale was out-of-date.

BeerMart sold the fifty-one cases of overage beer to its customer. The cases

---

**1.** Ind.Code § 7.1–5–5–9 provides that it is unlawful for a brewer to "cancel or terminate an agreement or a contract between a beer wholesaler and a brewer for the sale of beer, unfairly and without due regard for the equities of the other party."

were marked with a false code date that indicated that the beer was fresh. After it became evident that BeerMart had sold the overage beer, employees of BeerMart attempted to cover up the sale. In a letter dated November 11, 1985, Stroh notified BeerMart of the immediate termination of their wholesale agreement.

The evidence shows that BeerMart filed a false affidavit with the state court prior to removal to support its motion for a temporary restraining order. Mr. Buchanan, a salesman for BeerMart stated:

"At the warehouse, I inspected each can of beer in each case which did not contain a code date; said cases totaled approximately 33 in number.... As a result of said inspection, I did not find any can of beer that contained a code date which indicated that it was overage."

On April 18, 1986, 633 F.Supp. 1089, the district court entered an order granting BeerMart's motion for a preliminary injunction from which Stroh now appeals.

## II.

BeerMart argues that the district court properly granted the preliminary injunction. It argues that the court's weighing and balancing of the equities should be disturbed only in the rarest of cases. *Lawson Products Inc. v. Avnet Inc.,* 782 F.2d 1429, 1437 (7th Cir.1986). BeerMart contends that the court properly applied the facts to the standards enunciated in *Lafayette Beverage Distributors v. Anheuser-Busch,* 545 F.Supp. 1137, 1146 (1982) and discussed in *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir.1984) and *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589 (7th Cir.1986). The standard for issuance of a preliminary injunction involves a balancing of the following factors: (1) whether the applicant has an adequate remedy at law; (2) whether the applicant would suffer irreparable injury; (3) whether the applicant has a likelihood of success on the merits; and (4) an assessment of the harm to both parties.

Our decision that BeerMart is not entitled to equitable relief is in harmony with recent decisions in *Lawson, Roland,* and *American Hospital.* While we agree that the court should attempt to minimize mistake, we stressed in *Lawson* that a factual or legal error alone may be sufficient to establish that the court abused its discretion. *Lawson* at 1437. One of the ways a district judge may abuse his discretion is by "applying an acceptable preliminary injunction standard in a manner that results in an abuse of discretion." *id.* at 1437. Here, the district court erroneously construed Section 7.1–5–5–9 to supersede the plain language of the agreement.

## III.

BeerMart argues that Section 23B of the agreement incorporates Ind. Code § 7.1–5–5–9 into the contract thereby making it unfair for Stroh to terminate its wholesale agreement. However, application of the general rules of contract construction requiring that a contract be construed as a whole in an attempt to give meaning to all parts, indicates that the parties did not intend that Stroh should be required to deal with BeerMart after it had breached the express provisions of Section 11 of the agreement. *Corso v. Creighton University,* 731 F.2d 529, 532 (8th Cir. 1984).

It is also a general rule of contract construction that specific terms control over more general terms where both cannot stand together. Therefore, where the parties have agreed upon a specific term, an apparently inconsistent general statement must yield to the more specific term. *Fox Realty Co. v. Montgomery Ward & Company,* 124 F.2d 710 (7th Cir.1942). Here, Section 11 of the agreement specifically prohibits fraudulent conduct by the wholesale distributor as well as the sale of overage beer. Looking to the intent of the parties and applying the general rules of contract construction we find that Section 11 of the agreement justified Stroh's conduct.

## IV.

BeerMart argues that the district court decision is consistent with the construction accorded Ind.Code § 7.1-5-5-9 by Indiana courts. It relies on *Joseph Schlitz Brewing v. Central Beverage Co., Inc.*, 172 Ind. App. 81, 359 N.E.2d 566 (1977) to support its position that Stroh unlawfully terminated its agreement. In *Central Beverage,* Schlitz terminated its contract with Central Beverage and the court issued a preliminary injunction against Schlitz. BeerMart contends that the facts of *Central Beverage* are nearly identical to the facts in this case and that therefore the district court should be affirmed. However, in *Central Beverage,* the court found that Schlitz had unlawfully tried to control the internal operations and managerial decision making processes of Central's business, and that Schlitz's real reason for termination was its attempt to consolidate its wholesalers through unlawful means. In contrast, the court here found that the only reason for the termination of BeerMart's contract with Stroh was BeerMart's willful, fraudulent and deceptive acts.

BeerMart also relies on *Gilderhus v. Amoco Oil Co.*, 470 F.Supp. 1302 (1979) for the proposition that a dealer can commit fraudulent conduct without termination of its contract. In *Gilderhus* the court construed the Petroleum Marketing Products Act ("PMPA") to include a more lenient preliminary injunction standard which is not present in Ind.Code § 7.1-5-5-9. Also, in contrast to this case, Amoco was unable to prove any fraud by the franchisee. In short, *Gilderhus* supports Stroh's argument that no court faced with intentional unlawful conduct by a distributor has construed a dealer protection statute to prohibit termination of that dealer.

■ BeerMart also contends that *Lippo v. Mobil Oil Corporation*, 776 F.2d 706 (7th Cir.1985) supports its position. However, the agreement between Mobil and Lippo specifically included a provision granting Lippo a ten day period to cure any default under the agreement. The court found that Lippo's default was cured within the ten day period. Thus, the court in *Lippo* applied the specific provisions of the agreement to the facts of that case. No provision for a cure exists in the agreement between Stroh and BeerMart. We will not imply a right to cure into Ind.Code 7.1-5-5-9.

■ Finally, we are not persuaded by BeerMart's argument that the facts in *Lafayette Beverage Distributors v. Anheuser-Busch*, 545 F.Supp. 1137 (N.D.Ind. 1982), are distinguishable from the facts of this case. In *Lafayette Beverage,* the only case to have considered a termination of a beer wholesaler under Ind.Code § 7.1-5-5-9, the defendant brewery, like Stroh, terminated one of its wholesalers after it was discovered that the wholesaler had sold overage beer. The court in *Lafayette Beverage* held that the intentional sale of overage beer justified termination. We reject the appellee's argument that because Ralph Smith was out of town and unaware that the repackaging and sale of overage beer occurred that BeerMart should not be held responsible for its actions. Under the Restatement (Second) of Agency, fraud is imputed to the dealership.[2] Therefore, *Lafayette Beverage* cannot be distinguished on the basis of any claim of lack of knowledge on the part of Ralph Smith.

## V.

By enacting Ind.Code § 7.1-5-5-9, the Indiana legislature sought to protect wholesalers against unfair terminations by making it unlawful for a manufacturer to terminate, cancel or fail to renew a franchise of a dealer in bad faith. Stroh, therefore, was required under the statute to act fairly and with due regard for the equities of BeerMart. By committing fraud BeerMart deserved termination. No matter

---

**2.** The Restatement (Second) of Agency, Section 261 provides: "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

how long or in what detail Stroh investigated the conduct of BeerMart employees, the conclusion remains the same—Stroh was justified under the plain language of the agreement in its action.

Finally, we have held in *Mantek Division of NCH Corp. v. Share Corp.*, 780 F.2d 702 (7th Cir.1986); *American Hospital Supply;* and other recent cases that equitable relief is not available to parties who came to the court with unclean hands. "It is one of the very first principles of equity that he who asks for equity must do equity; that a party coming into a court of equity must come in with clean hands, free from wrong himself in relation to the matter in which they ask equitable relief." *McAllister v. Henderson*, 134 Ind. 453, 34 N.E. 221, 222–223 (1893). BeerMart employees committed fraud and perjury and cannot now seek equitable relief.

For the foregoing reasons, the judgment of the district court is

REVERSED.