**Elesmolee FOWLER d/b/a Fowler Construction, Appellant–Defendant,**

v.

**Michael G. CAMPBELL and Diane K. Campbell, Appellees–Plaintiffs.**

No. 41A01–9205–CV–146.

Court of Appeals of Indiana, First District.

April 26, 1993.

Lynnette Gray, Jones Johnson & Gray, Franklin, for appellant-defendant.

James F.T. Sargent, Sargent & Meier, Greenwood, for appellees–plaintiffs.

NAJAM, Judge.

### STATEMENT OF THE CASE

This is an appeal from an action for breach of a contract to install a septic system. Elesmolee Fowler d/b/a Fowler Construction ("Fowler") appeals from a judgment in favor of Michael G. Campbell and Diane K. Campbell ("Campbells"). We affirm.[1]

### ISSUES

We restate the issues presented on appeal as follows:

1. Did Fowler breach his contract to install a septic system in the Campbells' new house?

2. Did the Campbells establish that it was Fowler's breach of contract which caused their damages?

3. Did the trial court, in effect, reform the contract when it entered judgment?

4. Were the damages the trial court awarded excessive and unsupported by the evidence?

**1.** We note that our consideration of this appeal was delayed pending return of the Chronologi-

### FACTS

The Campbells owned property on the lakefront of Lamb Lake in Johnson County. On March 2, 1988, the Campbells and Fowler executed a contract ("Contract") for Fowler to build a custom built house for the Campbells on this property ("House"), which included a septic system.

As lot owners on Lamb Lake, the Campbells were members of the Lamb Lake Estates Lot Owners Association ("Association") and were bound by the Association's rules and regulations. Those rules and regulations required that the Association's Architectural Control Committee ("Committee") review and approve plans for a septic system and that the Committee inspect and approve the system during installation. The Johnson County Department of Health ("Department") imposed similar requirements.

Before their Contract with Fowler was executed, the Campbells had consulted with the Committee and with the Department regarding their plans for the House and septic system ("Plans"). The Campbells employed a professional, Robert Etter of MAJ Civil Engineering ("MAJ"), who prepared a plot plan and a septic system design, and the Campbells then submitted these Plans to the Department and to the Committee for approval. The Committee did not approve the original plot plan as submitted. After making field measurements, the Committee revised the Plans by making changes in the location of the finger system to accommodate the actual distances and topography. The revised plot plan was signed by the Campbells and approved by the Committee on October 28, 1987.

The Department issued a septic system installation permit to the Campbells, dated November 6, 1987. The permit approved "minimum requirements" and installation "as shown on engineered plot." Record at 81. Thus, the permit incorporated by reference the Plans which MAJ had prepared. The Association approved the Plans for the

cal Case Summary from the trial court, forwarded to us pursuant to a writ of certiorari.

House and septic system on December 12, 1987.

The Contract stated that the Campbells would furnish the Plans, that the House would be built according to the Plans and that Fowler would furnish a "complete septic system according to Johnson County Health Dept. and Lamb Lake Association." Record at 17. The Contract provided that "[a]ll materials and labor will be furnished by Fowler Construction to meet building codes of Johnson County and Lamb Lake Association." Record at 17.

During installation, the Association and the Department inspected the septic system to make certain that the system satisfied their requirements. With the apparent approval of the Committee, but not of MAJ or the Campbells, Fowler moved the septic tank from below the House toward the lake, where it was located on the plot plan, to an entirely different location up on the hill. No further changes in the septic system's design were approved by the Committee. After the septic system was completely installed, the Department made a final inspection so that an occupancy permit could be issued. Upon the final inspection at the Campbells' property, the Association returned the Campbells' $500.00 performance deposit.[2]

It was shortly after Fowler completed construction of the House and within thirty (30) days after the Campbells had moved into the House on April 1, 1989, that the first sewage water back-up occurred. Fowler testified that he discovered cloths, plastic bags, and other debris in the septic pump which had caused it to lock up and to cease pumping. Fowler advised the Campbells that the septic pump had been damaged because of the debris which was introduced into the system. Fowler cleaned out the pump and it began functioning again.

Several weeks later, another back-up occurred. Again, Fowler found debris in the septic pump. He notified the Campbells that these objects placed in the septic system were preventing it from functioning properly. Fowler told the Campbells that the septic pump was damaged and that a new one should be installed.

A third back-up occurred beginning in June of 1989. Also, during the summer months, sewage seeped out of the finger system onto the Campbells' driveway and yard. Fowler again visited the property, and on that visit Fowler took members of the Association and Department with him to observe the septic system's condition. The septic pump had again stopped working because foreign objects had become clogged in it. The Department official who accompanied Fowler to the Campbells' home told the Campbells that the problems they were having were not caused by any deficiency in the septic system's design, but rather were "due to the apparent misuse of the system." *See* Record at 377.

The Campbells contend that it was not until after this third back-up that they first learned, in October of 1989, that the septic system had not been installed according to the original Plans. Thereafter, Fowler installed a new septic pump, another 1,000 gallon septic tank and a warning light at a cost of $2,200.00, and the Campbells agreed to this new installation although they paid nothing for it. After the new pump was installed, no further sewage water backups occurred in the Campbells' home, although sewage water continued to seep through the fingers of the septic system onto the Campbells' driveway and yard. The warning light stayed on continuously, and in November of 1989, the pump again stopped working. When the Campbells uncovered the pump station, sewage ran out of the pump, down their yard, and into the lake. The Campbells claim that they tried again to contact Fowler but that he never responded.

During the winter of 1989–1990, the pump was not working. In May of 1990, the Campbells hired Jack Justice, a licensed electrician ("Justice"), who examined the pump and found numerous electrical code violations. Justice found that sewage wa-

---

**2.** The procedure followed was that once Johnson County had inspected and approved the septic system installation and had issued an occupancy permit, the Association would refund the $500.00 performance deposit given by the homeowner. Record at 315.

ter had entered the pump housing and "burnt the pump up." Record at 45. Justice replaced the pump and rewired the pump station. The Campbells paid Justice $1,249.57 for his labor and materials in making these repairs.

On May 9, 1990, the Campbells filed a complaint for breach of contract against Fowler. After a bench trial, on October 15, 1991, the trial court entered judgment in favor of the Campbells and awarded them $12,199.57 in damages. This appeal followed. We will state other relevant facts in our discussion of the issues.

## DISCUSSION AND DECISION

### Standard of Review

■ Initially, we note that on its own motion the trial court made special findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). Since neither party requested that findings be entered, the general judgment controls those issues which are not covered by the findings. *See State ex rel. J.A.W. v. Indiana Juvenile Parole Committee* (1991), Ind.App., 581 N.E.2d 989, 991. Under Ind. Trial Rule 52(D), when a trial court enters special findings and conclusions *sua sponte*, we will review the case as one decided on a general judgment with respect to any issue on which the court has not made a finding, and we will affirm the general judgment upon any legal theory supported by the evidence. *J.A.W.*, 581 N.E.2d at 991. Special findings control only as to those issues which they cover and will not be set aside on appeal unless they are clearly erroneous. *Id;* T.R. 52(A).

■ In our review, in order to determine whether a judgment is clearly erroneous, we apply a two-step analysis in which we consider both the findings of fact and the conclusions of law. *Id.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon, and findings of fact are clearly erroneous when the record is without facts or reasonable inferences to support them. *See De-Haan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Fowler

thus labors under a heavy burden in urging reversal.

The judgment below turns on two essential findings: that Fowler breached the Contract when he did not install the septic system according to the Plans and that the Campbells suffered damages attributable to Fowler's alleged breach.

### Issue One: Breach of Contract

Fowler first contends that he did not breach the Contract because he installed a septic system which complied with the regulations of both the Association and the Department, as required under the Contract. We disagree.

■ The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448, 461. Here, the parties agree there was a contract but disagree whether Fowler breached the Contract in his installation of the septic system and whether the breach, if any, caused the damages which the Campbells claim.

The Contract contained two provisions which must be reconciled. In its introductory paragraph, the Contract provided that, "House will be built according to plans." Record at 17. More specifically, in numbered Paragraph 5., the Contract also provided that Fowler would, "Complete septic system according to Johnson County Health Dept. and Lamb Lake Association." Record at 17. We believe the term "House" means not only the house itself but also its necessary appurtenances, including the septic system, and that Paragraph 5. does not stand alone but imposes an additional requirement with respect to the septic system.

■ Under the rules of contract construction, the provisions of a contract are to be construed together, *see Equimart Ltd. v. Epperly* (1989), Ind.App., 545 N.E.2d 595, 598, and specific terms control over general terms. *See BeerMart, Inc. v. Stroh Brewery Co.* (7th Cir.1986), 804 F.2d 409, 411 (construing Indiana law). Where

the parties have agreed to a specific term, an apparently inconsistent general statement must yield to the more specific term. *Id.* Thus, to the extent that Fowler modified the Plans in order to secure approval from the Department and the Association, as required under the Contract, there was no breach of contract. However, in our review of this question, we make a distinction between those modifications in the Plans which were actually required and those which Fowler made unilaterally and which may have been approved, but which were not required, by the Association and the Department. The fact that the Association and the Department may have approved the septic system as it was installed does not insulate Fowler from a breach of contract claim. While Fowler's compliance with the requirements of the Association and the Department was necessary, such compliance was in itself insufficient to satisfy Fowler's entire contractual obligation to the Campbells with respect to the septic system.

After comparing the septic system specifications contained in the Plans with the actual work completed, the evidence in the Record clearly demonstrates that, even when the modifications which the Association requested during installation are taken into account, Fowler did not install the septic system pursuant to the Plans, and he thereby breached the Contract. The specifications for the septic system called for a 1,500 gallon septic tank, a pump station with a storage chamber capacity of 250 gallons, and a pump set to pump 100 gallons per cycle. The Plans also precisely delineated the location of the septic tank. The evidence shows, and Fowler admits, that he did not comply with these specifications when installing the septic system. It is uncontroverted that Fowler installed a 1,000 gallon septic tank,[3] a pump station with a storage capacity of only 50 to 55 gallons and a pump capable of pumping

only 55 gallons per cycle. Fowler could not explain why these capacities varied from the Plans, although he did explain that the location of the finger system and of the septic tank itself differed from the original Plans because of requirements imposed by the Association, which had approved these two variations.

Fowler failed to install the septic tank, pump station and pump according to the Plans and specifications, and the trial court specifically found that the Campbells did not consent to any of these changes. Record at 21. At common law, under general contract principles, the slightest breach of the contract, no matter how trivial or unintended, may be the basis for an action for breach of contract. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.* (1993), Ind., 608 N.E.2d 975, 980. Here, the evidence shows that Fowler's failure to follow the Plans cannot be attributed entirely to requirements imposed by the Department or the Association and that more than a slight or incidental breach occurred. Thus, we conclude that the Campbells have shown that Fowler breached the Contract.

### Issue Two: Causation

■ Fowler next contends that there is no evidence of probative value linking the alleged breach of contract to the damages awarded. Fowler further contends that because foreign material was introduced into the septic system, it was not a deviation from the Plans, but the foreign material which caused the septic system to back up and damage the Campbells' home. Fowler argues, in effect, that even if a breach occurred, there was no causal relationship between the breach and the damages which the Campbells claim to have suffered. In order to recover on a breach of contract claim, the alleged breach must be a cause in fact of the plaintiff's loss. Farnsworth, *Farnsworth on Contracts* § 12.1, at 148

---

**3.** The Department did not require a 1,000 gallon septic tank. Rather, the Department issued a septic system permit which authorized a minimum 1,000 gallon septic tank. Record at 81. Fowler contends that the Association did not recommend that he install a 1,500 gallon septic tank and that a tank of such size would have to

be custom made. Record at 283. However, compliance with the Department's or the Association's minimum requirements does not insulate Fowler from liability for breach of contract. The MAJ Plans called for a septic tank with a 1,500 gallon capacity. Record at 66 and 84.

(1990). For a cause in fact to be a legal cause, it must have been a substantial factor in bringing about the harm. *Krauss v. Greenbarg* (3rd Cir.1943), 137 F.2d 569, 572, *cert. denied,* 320 U.S. 791, 64 S.Ct. 207, 88 L.Ed. 477. While there may be other contributing causes and more than one factor operating, the trier of fact may determine that one cause predominates over another in bringing about the harm. *Id.; cf. Huey v. Milligan* (1961), 242 Ind. 93, 103, 175 N.E.2d 698, 703 (actor's negligent conduct is "legal cause" of harm to another if his conduct is substantial factor in bringing about harm).

▪ The principle of legal causation in contracts is similar to that in negligence. *Farnsworth,* § 12.1 at 148. However, in a breach of contract action, where an injury arising from the breach may have resulted from multiple causes, Indiana does not recognize comparative causation. The test of causation in common law contract actions is not whether the breach was the only cause, or whether other causes may have contributed, but whether the breach was a substantial factor in bringing about the harm. *Greenbarg,* 137 F.2d at 572. While the Campbells' misuse contributed to the sewage water back-ups from their septic system, the record supports the trial court's conclusion that Fowler's failure to install the septic system according to the Plans was a substantial factor in bringing about the Campbells' damages, which is all that is required. *See id.* Thus, we are not persuaded by Fowler's challenge to the trial court's finding that the breach caused the damages.

There is sufficient evidence of probative value in the record to conclude that Fowler's unauthorized modifications contributed to the sewage water back-ups which occurred in the House. There is also evidence in the record that the Campbells abused the septic system. However, the only question we may consider on appeal is whether the trial court, as the trier of fact, made a permissible deduction of causation from other established facts. *Lewis by Lewis v. Bonahoom* (1991), Ind.App., 583 N.E.2d 175, 178. Fowler made unautho-

rized modifications to the Plans which altered the capacity of the septic system, and the septic system failed. From those established facts, the trial court deduced that Fowler's breach of contract contributed to the sewage water back-ups which occurred in the House, a reasonable inference.

▪ The reasonableness of an inference is determined by whether the inferred fact is a probable hypothesis from the proven facts and circumstances in light of common knowledge and experience. *Puckett v. McKinney* (1978), 175 Ind.App. 673, 678, 373 N.E.2d 909, 912; *DeMichaeli & Associates v. Sanders* (1976), 167 Ind.App. 669, 680–81, 340 N.E.2d 796, 803. An unreasonable inference yields an arbitrary or capricious result based on speculation, guess, surmise, conjecture or mere possibility. *Puckett,* 175 Ind.App. at 678, 373 N.E.2d at 912; *DeMichaeli,* 167 Ind.App. at 681, 340 N.E.2d at 803. On appeal we may not substitute our own judgment on the question whether the inference drawn is a right one or whether a different inference would be better supported but must determine whether the inference is unreasonable as a matter of law. *See DeMichaeli,* 167 Ind. App. at 681–82, 340 N.E.2d at 804.

▪ Thus, within the scope of appellate review, where the evidence permits conflicting inferences, we must affirm unless we are left with a definite and firm conviction that the inference was unreasonable and that a mistake was made by the trial court. *See Searcy v. Searcy* (1991), Ind. App., 583 N.E.2d 1216, 1220, *trans. denied.* We cannot say that the trial court's inference was unreasonable, and we find no such mistake. We conclude that the evidence supports the finding of a causal relationship between the breach and the damages claimed.

### Issue Three: Reformation

Fowler next claims that the trial court improperly reformed the contract when it entered judgment. We find that the trial court did not reform the contract.

▪ Reformation of a contract is appropriate only when both parties mistaken-

ly execute a document which does not express the true terms of their agreement, or when one party executes a contract but the other party acts fraudulently or inequitably while having knowledge of the first party's mistake. *Sharp v. Jones* (1986), Ind.App., 497 N.E.2d 593, 596. However, a trial court which enforces the terms of a contract as written does not "reform" the contract. *Id.* at 595–96. Here, no mistake occurred by either party regarding the terms of the Contract. The trial court construed and interpreted the Contract as it was written, and there was no reformation. Fowler's claim of reformation must fail.

### Issue Four: Damages

Finally, Fowler contends that the damages the trial court awarded were excessive and unsupported by the evidence and that the trial court awarded the Campbells double damages.

 An appeal of a damage award as excessive is governed by a strict standard of review. *Persinger v. Lucas* (1987), Ind.App., 512 N.E.2d 865, 868. We will neither reweigh the evidence nor judge the credibility of witnesses, and will consider only the evidence favorable to the award. *Id.* A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. *Id.* A damage award must be supported by probative evidence and cannot be based on mere speculation, conjecture, or surmise. *Id.* Thus, a damage award will be reversed only when it is not within the scope of the evidence before the finder of fact. *Id.*

 It is a fundamental rule of damages that a party injured by a breach of contract may recover the benefit of his bargain but is limited in his recovery to the loss actually suffered. *Indiana Tri–City Plaza Bowl, Inc. v. Estate of Glueck* (1981), Ind.App., 422 N.E.2d 670, 678, *trans. denied.* When a contractor breaches an agreement, the injured party may not be placed in a better position than he would have enjoyed if the breach had not occurred. *Ethyl Corp. v. Forcum–Lannom*

*Associates* (1982), Ind.App., 433 N.E.2d 1214, 1221, *trans. denied.* A damage award must be referenced to some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits or direct inference from known circumstances. *Persinger,* 512 N.E.2d at 868.

 In an action for breach of contract, the damages claimed must be the natural, foreseeable and proximate consequence of the breach. *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 98, *trans. denied.* The proper measure of damages for breach of a construction contract where compliance with the original contract would require that a substantial portion of the work be "undone" is the difference between the fair market value of the work as performed and fair market value of the work performed in accordance with contract specifications. *Gough Construction Co. v. Tri–State Supply Co.* (1986), Ind.App., 493 N.E.2d 1283, 1284–85. However, another measure applies where the defects are of such a character that they might easily be remedied without taking down and reconstructing any substantial portion of the improvements. *Sanborn Electric Co. v. Bloomington Athletic Club* (1982), Ind.App., 433 N.E.2d 81, 88. Where, as here, the construction contract has been completed and the owner has paid the contract price in full and taken possession, one measure of damages is the reasonable cost of altering the defective parts to make them conform to the plans and specifications. *See id.; Springer v. Jones* (1919), 76 Ind.App. 269, 270, 123 N.E. 816, 817.

 The trial court awarded a total of $12,199.57 in damages, covering the insurance deductible, repair and clean-up costs for the House, excavation of the pump station, repairs to the pump and wiring, and the estimate indicating the cost for installation of a new septic system as designed by MAJ. Fowler claims that awarding sums both for the repairs to the septic system and for installation of a new septic system constitutes, in effect, double dam-

ages and amounts to a windfall for the Campbells.

The evidence shows that there was physical damage to the House caused by sewage water back-up and that the Campbells incurred direct expenses to clean up the mess and also to repair the original system. The evidence also supports the conclusion that even after Fowler's repairs had been made, the system did not work properly. This was a new, custom built house. The Campbells were entitled to the benefit of their bargain, including a septic system built to the specifications agreed upon. Hence, they offered evidence at trial that it would cost them $8,900.00 to install a septic system according to the Plans. That evidence was admitted without objection, and satisfied their burden of proof on that issue.

The cost of curing the defects was the measure of damages utilized in this case. At trial it was incumbent upon Fowler, albeit without conceding liability, to present evidence that this measure of damages was incorrect or to present evidence of probative value showing another, more beneficial measure of damages. *See Sanborn*, 433 N.E.2d at 89. This he failed to do. Fowler claims that the damages awarded were excessive, but we cannot say that the evidence did not tend to prove the matter asserted or that the damages were beyond the scope of the evidence received at trial, and thus, we must affirm the damage award. *See Persinger*, 512 N.E.2d at 868.

### CONCLUSION

Fowler breached the Contract, the trial court construed the Contract as written, and the trial court properly awarded damages. The judgment is in all things affirmed.

Affirmed.

BAKER and SHIELDS, JJ., concur.