Richard L. STOUT, Plaintiff,

v.

FARMERS INSURANCE EXCHANGE, improperly named in the Complaint as Illinois Farmers Insurance Co., Defendant.

No. NA 92–16 C.

United States District Court, S.D. Indiana, New Albany Division.

Dec. 29, 1994.

See also, 852 F.Supp. 704.

Michael Wm. Warren, Lorch & Naville, New Albany, IN, for plaintiff.

John S. Beeman, Jeffrey R. Oberlies, Harrison & Moberly, Indianapolis, IN, James C. Tucker, Tucker & Tucker, Paoli, IN, for defendant.

## ENTRY

BARKER, Chief Judge.

This controversy centers on whether Defendant justifiedly refused to pay on the home insurance policy issued to Plaintiff. A bench trial was conducted on October 17–18, 1994. Having heard and considered the evidence, the Court finds that Defendant was justified in its refusal to pay on Plaintiff's policy. The Court, accordingly, enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff is and was, at all relevant times, a resident of Indiana.

2. Defendant is a corporation incorporated and existing under the laws of the State of California.

*Olive St. Fire Loss*

3. Plaintiff had a fire loss at his residence on 203 W. Olive St., French, Lick, IN, 47432, on Sunday, May 19, 1991.

4. Plaintiff purchased the Olive St. house approximately two months prior to the fire for $13,500.00.

5. Plaintiff had a policy of insurance issued by Farmers Insurance Exchange with dwelling coverage of $56,300.00 and personal property coverage of $35,000.00.

6. Plaintiff was the last known person in the house prior to the discovery of the fire loss; when Plaintiff left his house at approximately 4:00 p.m. on Saturday, May 18, 1991, the house was locked and secured.

7. The French Lick Fire Department ("FLFD") received the alarm at 4:45 a.m. on Sunday, May 19, 1991.

8. The FLFD found the house to be locked and secured and had to break in to the house.

9. Plaintiff testified that at the time of the fire he was staying at the home of Phyllis Runyon, his girlfriend of several years, in Orleans, Indiana, approximately twenty miles from the Olive St. house.

10. Plaintiff was the only person with keys to his house.

11. Plaintiff's neighbors, Joan Huff, Evelyn Huff, and Sherry Green Opson, saw no suspicious individuals in the neighborhood on the night before or the morning of the fire.

12. Plaintiff had no enemies and no problems with crime in the neighborhood.

13. Defendant determined that the actual cash value of the contents claimed by Plaintiff is $12,672.12, and the replacement cost value is $14,714.05.

14. The actual cash value of the Olive St. building is $26,500.00, and the replacement cost is $46,691.55.

15. Defendant advanced $600.00 in payments under the insurance contract to Plaintiff during the investigation of the claim under a full reservation of rights. However, Defendant has yet to pay any more on the contract.

16. Plaintiff was able to move in with Phyllis Runyon after the fire and he has not incurred any additional living expenses as a result of the Olive St. fire.

17. Plaintiff gave false and misleading information to investigators sent by Defendant to investigate Plaintiff's claim of fire loss to the Olive St. property.

*Indiana Ave. Fire Loss*

18. Plaintiff had a fire loss at his residence at 449 Indiana Ave., French Lick, Indiana, on Sunday, January 13, 1991.

19. The FLFD received the alarm for the January, 1991, fire at 3:27 a.m.

20. Plaintiff was the last known person in the Indiana Ave. residence prior to the discovery of the January, 1991, fire loss.

21. Plaintiff left his Indiana Ave. residence at approximately 5:00 or 5:30 p.m. on Saturday, January 12, 1991.

22. Plaintiff claims he was at the residence of Phyllis Runyon in Orleans, Indiana, at the time the fire was discovered on Sunday, January 13, 1991.

23. Indiana Union Insurance Company hired L & H Investigations of Highland Park, Illinois, to determine the cause and origin of the fire at the Indiana Ave. house. L & H Investigations determined that the cause of the fire was the failure in the flex gas line of the hot water heater.

24. The Indiana Union Insurance Company paid Plaintiff approximately $59,139.68 for the damage caused by the fire loss in January, 1991.

*Expert Testimony about the Olive St. Fire*

25. A fire origin and cause expert, Gary Mang, determined that the Olive St. fire was intentionally set and was not caused by accidental means. Additionally, Mang stressed the similarities between the Olive St. fire and the Indiana Ave. fire. Mang also noted that

most incendiary fires occur very early on Sunday mornings.

26. Fred Daffer from the Indiana State Fire Marshal's Office investigated the cause and origin of the fire. Daffer eliminated all accidental causes of fire and concluded that the cause of the fire was undetermined.

27. Daffer did not take any samples at the scene of the fire nor did he dig out the scene of the fire.

28. Dr. Bob Pribush, an expert in the analysis of fire debris for suspected volatile accelerant, tested four samples from the fire scene, using gas chromatography.

29. Two of the samples tested by Pribush were taken by Mang from debris within the walls of the center portion of the house. The other two samples were collected from the fire debris in the basement.

30. Pribush determined that all four samples contained petroleum distillates identified as burned gasoline.

31. Art Jones, a FLFD firefighter who responded to the call for the Olive St. fire, testified that the color of the flames of the fire was indicative of an accelerant being used in the fire.

32. Jones also fought the Indiana Ave. fire and noted many similarities between the two fires. Both took place early on a Sunday morning. Both houses suffered structural damage at the same place on the floors. Both fires were unusually hot. Both fires had high flames. After both fires, the walls in the houses sagged.

*Plaintiff's Financial Situation at the Time of the Olive St. Fire*

33. Plaintiff was divorced from his wife of 38 years in 1990 and, as a result, he lost a significant amount of his assets and ability to earn money, including the income from their rental properties.

34. Plaintiff had health problems and was not employed in 1990 or 1991.

35. Plaintiff did not file federal or Indiana income tax returns in 1989, 1990, or 1991.

36. On April 23, 1991, Plaintiff listed his Olive St. house for sale for $23,500.00. The house was listed for a period of two to three weeks, but it was not listed for sale on May 19, 1991, the date of the discovery of the fire loss.

37. Plaintiff did not receive any written or oral offers for his house while it was on the market.

38. Plaintiff had listed his house for sale because he wanted to move to Florida. Plaintiff took his house off the market, he testified, because he realized that he could not buy a comparable house in Florida for the amount of money he would receive for his Olive St. house.

39. At the time of the Olive St. fire, Plaintiff had an outstanding note with Orange County Bank in the amount of $12,-159.58 coming due on May 26, 1991. Plaintiff made no payment on the note when it came due. The note was renewed, with added interest. As of January, 1993, Plaintiff had yet to make a payment on the note.

40. At the time of the Olive St. fire, Plaintiff had a small claims action for $800.00 plus costs pending against his brother, Raymond Stout, in Orange County Small Claims Division. A trial was scheduled for May 30, 1991. However, on May 28, 1991, the matter was dismissed because the court was informed that the amount had been paid in full.

*Damages to Plaintiff's Belongings*

41. Very few of Plaintiff's clothes were damaged in the fire. After the fire, the dresser drawers were opened and mostly empty. Plaintiff contends that the house was ransacked after the fire. However, Gary Mang testified that the patterns of smoke damage on the dressers indicate that the dresser drawers were already opened when the fire burned.

42. Plaintiff was unable to testify to anything of sentimental value which was irretrievably lost in the fire. Plaintiff testified that his picture albums suffered "some smoke damage," but he did not produce them as evidence. Although Plaintiff claimed that a picture of his deceased son was lost in the fire, he was able to replace it with an identical one in the possession of Plaintiff's mother. The shotgun Plaintiff had bought his son as a child was not damaged. Plaintiff's pet, a

small dog, was staying with Plaintiff at Phyllis Runyon's house at the time of the fire.

### The Testimony of Eddie Walton

43. Eddie Walton, a lifelong acquaintance of Plaintiff, testified that Plaintiff boasted to him about his ability to profit from arson. Walton testified that Plaintiff told him that the Indiana Ave. fire was actually caused by Plaintiff putting chemicals on a faulty flex line. Walton also testified that Plaintiff tried to get Walton to participate in a plan to buy a house in Florida, burn it down, and then collect the insurance. Walton said that he declined Plaintiff's offer because Walton became concerned that Plaintiff would kill him in the process.

44. Walton is a diagnosed paranoid schizophrenic who was not taking any medication for his disorder at the time he testified. Plaintiff's brother, Gary Max Stout testified that Walton has a poor reputation for truthfulness in the community.

45. Walton tape recorded a series of conversations with Plaintiff and then spliced them together with some of his own comments about the conversations and about his fears that Plaintiff intended to hurt him. The tape clearly contains Plaintiff's voice discussing his methods for padding his reimbursements from the insurance companies.

46. Walton tried to get Defendant to pay for the tape, but Defendant made no such payment to Walton and Walton testified at trial only after having been subpoenaed to do so.

47. Plaintiff in no way challenged or rebutted Walton's assertion that it was indeed Plaintiff's voice on the tape. The editing on the tape is crude, to say the least, and in it Walton makes no secret of the fact that he is splicing conversations.

48. To the extent that the tape reveals Plaintiff's clear willingness and pride in misrepresenting the nature and degree of his loss to insurance companies, it impacts the Court's assessment of Plaintiff's veracity and credibility as a witness and party. However, beyond that, the Court does not rely on the tape to establish the truth of the matters asserted by Plaintiff or Walton in the tape.

49. Despite Walton's illness, his testimony about Plaintiff was quite lucid and credible. Walton had nothing to gain by his testimony and in fact remained convinced that his testimony put him at great risk of harm.

### Plaintiff's Other Fire Losses

50. Plaintiff and Ruth E. Stout ("Ruth") had a fire loss at their rental property located at 307 Main St., Mitchell, Indiana, on Thursday, January 12, 1984, at approximately 2:20 a.m. The rental property was occupied by Gary Stout, Plaintiff's brother.

51. Plaintiff reported a fire loss on May 21, 1982 to a property belonging to him and Ruth located at 219 E. Vine, Mitchell, Indiana. Allstate Insurance Co. paid Plaintiff and Ruth $759.50 as a result of this fire loss.

52. Plaintiff and Ruth had a fire loss as a result of a dynamite explosion at their residence on Wildwood Lake Road in Paoli, Indiana, on or about Sunday, February 23, 1969, while neither Plaintiff nor Ruth were at home. As a result, Plaintiff and Ruth collected insurance money.

## CONCLUSIONS OF LAW

1. Any finding of fact stated above, to the extent that it constitutes a conclusion of law, is herein incorporated by reference as an additional conclusion of law by the court.

2. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332.

3. There are two distinct legal claims an insured may bring when an insurance claim has been wrongly denied, one for breach of contract over the insurance policy and another in tort for breach of the insurer's duty to deal with the insured in good faith. The two claims each have separate, although often overlapping, elements, defenses, and recoveries. *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520 (Ind.1993).

4. An insurer has an obligation to deal with an insured in good faith; this duty includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured;

and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim. *Id.* at 519.

5. A good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith, even where it is ultimately determined that the insurer breached its contract. *Id.* at 520.

6. An insurance contract is controlled by the same law as any other contract. *Auto-Owners Mutual Ins. Co. v. L.P. Cavett Co.,* 882 F.2d 1111, 1113 (7th Cir.1989); *Burleson v. Illinois Farmers Ins. Co.,* 725 F.Supp. 1489, 1495 (S.D.Ind.1989) (citing *Metropolitan Life Ins. Co. v. Alterovitz,* 214 Ind. 186, 14 N.E.2d 570, 577 (1938); *Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100, 1103 (Ind. App.1980)).

7. The insurance contract between Plaintiff and Defendant excludes coverage for an intentionally set fire, caused by or at the direction and control of Plaintiff with his knowledge or consent, and not by accidental means or causes.

8. The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Fowler v. Campbell,* 612 N.E.2d 596, 600 (Ind.App.1993) (citing *Peterson v. Culver Educational Foundation,* 402 N.E.2d 448, 461 (Ind.App.1980)). The existence of the insurance contract is not in issue. However, the breach of the contract and the amount of damages are contested. Therefore, in order to prevail, Plaintiff must prove both of these elements by a preponderance of the evidence. *Id.* at 601; *Palace Entertainment, Inc. v. Bituminous Casualty Corp.,* 793 F.2d 842, 843 (7th Cir.1986).

9. Defendant has asserted two affirmative defenses: 1) that the fire loss was a result of arson caused by or at the control of Plaintiff with his knowledge or consent, and Defendant is therefore not liable under the insurance policy (the "arson" defense); and 2) Plaintiff has willfully misrepresented facts in his claim for losses. The burden is on the Defendant to prove at least one of the affirmative defenses by a preponderance of the evidence. *Palace Entertainment, Inc.,* 793 F.2d at 846.

10. Circumstantial evidence is sufficient to establish proof of arson. *Hoosier Ins. Co., Inc. v. Mangino,* 419 N.E.2d 978, 986 (Ind.App.1981), *reh'g denied; Gregory's Continental Coiffures & Boutique v. St. Paul Fire & Marine Ins. Co.,* 536 F.2d 1187, 1191 (7th Cir.1976).

11. The Court is persuaded that the circumstantial evidence of arson is persuasive and Defendant has met its burden of proving its affirmative defense. The fire experts all ruled out any accidental causes of the fire. Plaintiff was in a difficult financial situation and had been unable to sell his house. The house itself was locked and secured when Plaintiff left. Plaintiff was the only one who stood to gain by the fire, and his past experience with fire insurance had proven to him that he would indeed receive payment as a result of the fire. Additionally, although the fire loss was severe, virtually nothing of sentimental value to Plaintiff suffered significant damage.

12. None of Plaintiff's proffered reasons for how the fire accidentally started is at all persuasive. None of the experts in any way supported Plaintiff's theories. One of Plaintiff's theories, that the fire was started by Plaintiff's dog's blanket is especially suspect because of the amount of time Plaintiff and his brother spent videotaping the dog blanket in the house before the fire.

13. Plaintiff's proffered explanation for how (and why) an unidentified arsonist damaged his house without leaving any sign of forced entry is similarly lacking. Plaintiff suggested that someone could have entered the attic through an opening over the front door without having to break in. However, this Court is unconvinced that any arsonist, without Plaintiff's assistance, would be sophisticated and skilled enough to get in and out of the outside attic entrance without being detected.

14. This Court concludes that the fire at Plaintiff's Olive St. residence on May 19, 1991, was an intentionally set fire, caused by

or at the direction and control of Plaintiff with his knowledge or consent, and not by accidental means or causes.

15. Therefore, the Court does not reach the issue of whether Plaintiff has met his burden of proof for breach of contract because, having proven its affirmative defense of arson by a preponderance of the evidence, Defendant is entitled to prevail on Plaintiff's breach of contract claim. Neither does the Court resolve the second affirmative defense regarding Plaintiff's willful representation of losses.

16. Defendant is entitled to prevail on Plaintiff's claim of bad faith failure to pay because, given the circumstantial proof of arson, Defendant's failure to pay on Plaintiff's insurance contract was entirely justified.

IN CONCLUSION, for the reasons stated above, the Court finds that judgment shall enter in favor of the Defendant. Plaintiff is ordered to repay Defendant the $600.00 Defendant paid Plaintiff under reservation of rights while the cause of the fire was being investigated.

It is so ORDERED.